hLANDRIEU, Judge.
The Orleans Parish School Board appeals a judgment for $841,579.83 (which includes $261,132.14 in attorney’s fees) rendered against it by the trial judge in favor of plaintiffs Graeio DeSalvo, Gary Breaux, and Thomas Patterson, and their spouses, based solely on La.Rev.Stat. 22:657, the penalty provision in Louisiana’s Insurance Code. Plaintiffs, or their spouses, were employed by the School Board and were all participants in the School Board’s health care plan (the plan), which was provided to them as part of their compensation package and which constituted a significant fringe benefit.
At the time that plaintiffs sought the medical treatment which is the subject of this dispute, the School Board’s plan offered three options: (1) a health maintenance organization (HMO), under which a participant employee selected a primary care physician (PCP) to provide and/or arrange for the participant’s medical care, and the plan paid for 100% of a participant’s medical care; (2) a preferred provider organization (PPO) where the participant could go to any provider in the organization, and the plan paid for 80% of a participant’s medical care, with the participant being responsible for co-payments and/or deductibles; (3) |2traditional indemnity coverage where the participant could choose any medical provider he wanted, and the plan paid for 70% of a participant’s medical services.
To administer the plan, the School Board contracted with a joint venture of Group Insurance Administration of Louisiana (GIA) and Bankers Life and Casualty Company (Bankers).[1] The School Board funded the plan and issued checks to GIA. GIA had the responsibility of processing claims and physically paying the providers. GIA went into bankruptcy sometime after medical services were rendered to plaintiffs, and the School Board terminated its contract with the joint venture.
All plaintiffs testified that they selected option 1, the HMO, which in this case was Maxicare Life and Health Insurance Company. The parties stipulated that all medical care at issue was under option 1 and that all services were obtained at the direction of a PCP. Although the providers in this case were part of the PPO, it is the participant’s status as option 1 enrollees which is relevant in this instance because that is what determines whether the participant is responsible for any out-of-pocket expenses. Thus, while ordinarily a participant who seeks care from a PPO provider is responsible for 20% of the cost of the medical services,plaintiffs saw the providers in this case at the direction of their PCP so that they were not responsible for 20% of the charges.
HMOs, like those described in option 1, are designed to have a “paperless” claim system. Health care providers in an HMO setting are prohibited from seeking payment from the participants for covered services under the HMO by statute.[2] Plaintiffs, however, were all recipients of collection efforts by various providers.
|3The only issue at trial was the application of the penalty provision to the School Board based on the School Board’s alleged failure to pay timely the charges of the various health care providers. By selecting the HMO option,plaintiffs were not out-of-pocket *373 any money.[3] Furthermore, prior to trial, the School Board filed a motion in limine to exclude evidence on plaintiffs’ alleged damages due to the collection efforts to which they were subjected. Finding that plaintiffs failed to make a claim for general damages against the School Board, the trial judge granted the motion in limine and did not consider damages plaintiffs may have suffered from the collection efforts.
The penalty provision at issue in this lawsuit, La. Rev Stat. 22:657, provides in part:
A. All claims arising under the terms of health and accident contracts issued in this state, ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist.... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court.
¡Íí
C. Any person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans.
UUnder this statute, plaintiffs must prove that the School Board violated the penalty provision by failing to pay claims within thirty days from the date the School Board was furnished with written notice and proof of those claims. The School Board sought to prove in the trial court that this statute did not apply to it or to its plan and that just and reasonable grounds existed for the delay in payment to the providers. To prove the latter, the School Board tried to establish that it acted reasonably in paying the providers, whereas GIA and the providers did not fulfill their obligations imposed by law or under the various contracts at issue. The trial judge, in lengthy reasons for judgment which were taken verbatim from plaintiffs’ post-trial memorandum, agreed in all respects with plaintiffs and refuted each of the School Board’s arguments. The trial judge assessed a penalty equal to the total amount of delayed payments to the providers for each of the three sets of plaintiffs, plus attorney’s fees of over $261,000.00.
La. Rev Stat. 22:657 is penal in nature and must be strictly construed such that penalties and attorneys fees may not be imposed unless the refusal to pay within the time limit is found to be arbitrary and capricious. Rippon v. Variable Protection Admins., Inc., 537 So.2d 262 (La.App. 4th Cir. 1988), writ denied, 541 So.2d 833 (La.1989); Toups v. Equitable Life Assur., 94-1232 (La. App. 3rd Cir. 5/3/95), 657 So.2d 142, writ denied, 95-2102, 2103, 2110 (La.12/8/95), 664 So.2d 421. Whether an insurer’s reasons for delay provide just and reasonable grounds is a question of fact to be determined from the individual facts and circumstances of each ease. See Poche v. Louisiana Health Services & Indemnity Company, 391 So.2d 17 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 885 (La.1981). We will not set aside the trial court’s factual determination unless it is clearly wrong.
|5In its appeal, the School Board presents several arguments to support reversing the trial court’s judgment.[4] Because we find merit in two of the arguments offered by the School Board, we pretermit discussion of the other arguments except to note that, despite *374 what we said in Rizzuto v. City of New Orleans, 94-1016 (La.App. 4th Cir. 1/19/95), 650 So.2d 341, it appears that La.Rev.Stat. 33:8062 would exempt the School Board’s plan from the auspices of the Insurance Code which would include the penalty statute. In Rizzuto, however, we were not presented with argument on the applicability of that statute, and this court’s holding, in the context of a declaratory judgment, that the health plan of the City of New Orleans could be subject to the penalty provision of La.Rev. Stat. 22:657 does not preclude the arguable applicability of La.Rev.Stat. '33:3062.
In assignments of error numbers 6 and 7, the School Board argues that plaintiffs introduced insufficient evidence that it paid claims untimely under La.Rev.Stat. 22:657 or that it acted arbitrarily and capriciously to delay payment. We agree.
Plaintiffs’ main witness was Mary Wiggen-horn, a former paralegal for plaintiffs’ counsel. Ms. Wiggenhorn compiled information on payments owed to and paid to the various providers by the School Board, through GIA. Although she said that she saw no entry where payment to the providers was made less than ninety days from when the claims were submitted to GIA, she did acknowledge that she had complete information on only a small portion of the claims. Her charts, in most cases, provided no way to determine when the School Board, as opposed to GIA, received notice to pay, or when the School Board paid GIA. For the DeSalvos only, information was provided as to when the School Board was 16notified of the claim and paid GIA The delay from notification to when the School Board paid GIA exceeded fifteen days only three times.[5]
Another problem with Ms. Wiggenhorn’s data was that the information that she analyzed for the Breauxs, the DeSalvos, and the Pattersons was not uniform. The data for the Breauxs attempted to show (1) the date GIA received a claim; (2) the date GIA processed the claim; and (3) the total days from receipt of 'claim until processed. On the other hand, the data compiled on the DeSal-vos showed (1) the date GIA received a claim; (2) the date the School Board paid GIA; (3) the total days from receipt of claim by GIA to the date the School Board paid GIA; (4) the total days from receipt of claim by GIA until GIA paid the provider.
For the Pattersons, the only data analyzed was (1) the date of medical service; (2) the bill date; and (3) the “approval date” on the explanation of benefits form. Ms. Wiggen-horn explained that GIA’s bankruptcy interfered with obtaining data on the Pattersons, •so the information she had came from the Pattersons. The inadequacy of the data on the Pattersons is most apparent in Ms. Wig-genhom’s admission that, although the total amount billed equaled over $372,000.00, she had complete information on only $9,907.00 of that amount. In effect, the Pattersons failed to prove that their providers were even paid untimely.
Overall, the evidence presented by plaintiffs was insufficient to prove a violation of the penalty statute by the School Board. To come under the terms of La.Rev.Stat. 22:657, plaintiffs were required to show when the insurer received written notice and proof of claim. The insurer in this case is the School Board, not GIA. Plaintiffs offered no proof under an agency theory that notice to GIA would suffice, and indeed, the record shows that under the contracts between the various providers and GIA, GIA typically assumed the role of agent of the |7providers to receive payment from a payor such as the School Board. GIA’s failure to remit payments to the providers is a matter between GIA and the providers and cannot serve as the basis for assessing penalties against the School Board under La.Rev.Stat. 22:657.
Moreover, plaintiffs offered no evidence to show that the School Board acted arbitrarily or capriciously with regard to its issuance of payments under the plan. Under Rippon and Toups, supra at 145, such a showing is required. Plaintiffs had the deposition of Robert Carter of GIA admitted into evidence, but Carter merely said that GIA’s *375 standard practice was to pay the providers late.
Conversely, the School Board offered evidence to show that it acted reasonably in its efforts to issue payments under the plan. The testimony of the School Board’s former employee benefits manager and its current director of risk management showed not only that the School Board did what it was supposed to do according to the plan document and acted reasonably with regard to issuing payments to GIA, but also that GIA was the culprit. Moreover, the record in this case shows that the providers required plaintiffs, all HMO enrollees, to sign payment guarantees at the hospital and pursued collection avenues against, plaintiffs. Such actions were clearly contrary to the provisions of the contract between the School Board and GIA, as well as La.Rev.Stat. 22:2018.
Hence, with no evidence from plaintiffs that the School Board acted unreasonably, much less arbitrarily and capriciously, we find that the trial judge clearly erred in finding that the School Board violated the terms of La.Rev.Stat. 22:657 and in assessing penalties and attorney’s fees against the School Board based on such a violation. Furthermore, the action of the providers in instigating collection efforts against plaintiffs, or of GIA in allowing the providers to do so, is not imputable to the School Board and does not justify imposition of a penalty upon the School Board.
|8We also find clear error in the trial judge’s application of the penalty statute in this case because plaintiffs received all of their medical services under option 1, the HMO, and incurred no out-of-pocket expenses requiring reimbursement. In assignment of error number 5, the School Board argues that because La.Rev.Stat.. 22:657 was enacted to protect medical insurance benefits recipients from incurring out-of-pocket expenses without timely reimbursement by the insurer, the court erred in applying the penalty statute to provide a windfall to these plaintiffs, each of whom received all of their medical services under option 1 and incurred no expenses. We agree.
. The School Board’s main witness was Bret Clesi, an employee health benefits consultant. Mr. Clesi, who was qualified as an expert in employee health benefits and employee health benefits legislation and public policy, testified for an entire day. Simply stated, he maintained that La.Rev.Stat. 22:657 was not designed to cover a situation involving an HMO because, under a true HMO, participants are not liable for any out-of-pocket expenditures and are not even responsible for filing claims. Indeed, in this case, the plan document specifies that claim forms are not used for option 1 plan participants.
Mr. Clesi was questioned extensively by both sides as to his interpretation of various select provisions in the contracts pertaining to the plan, i.e. the plan document and attached amendments and letters, the School Board’s contract with GIA, as well as the Maxicare and individual provider contracts with GIA. Although the parties were attempting to show whether the providers were able to seek payment from the participants, we find the various contract provisions ambiguous in this regard because typically the contract provisions did not distinguish between the three options within the plan. Clearly, any provision in a contract between a provider and GIA which purports to allow a provider to seek | gpayment from the participants conflicts with La.Rev.Stat. 22:2018, at least with regard to option 1 participants, which plaintiffs were.[6]
*376 Perhaps the most significant reason for not applying La.Rev.Stat. 22:657 in an HMO context is found in what we can surmise about legislative intent from the addition of subsection G of La.Rev.Stat. 22:657 in Acts 1997, No. 1313, § l.[7] This addition indicates not only that the legislature contemplated that the hopenalty statute, as it existed, did not apply in an HMO setting, but also that if it is to apply in such a setting, then it applies only to “enrollee claims for reimbursement,” not provider claims and subjects only the HMÓ to penalties, not the employer.
Accordingly, becausé the evidence showed that the School Board complied with its legal and contractual obligations under the plan, and plaintiffs provided no evidence that the School Board acted arbitrarily and capriciously, or even unreasonably, to delay payment, the trial court erred in penalizing the School Board. Plaintiffs failed to prove that the School Board actually violated the terms of La.Rev.Stat. 22:657. In addition, the trial judge erred in applying La.Rev.Stat. 22:657 in the context of an HMO, in which plan participants are not hable for out-of-pocket expenditures. We reverse the judgment assessing penalties and attorney’s fees against the School Board.

REVERSED.

. Counsel for Bankers was present at trial but was not allowed to participate because all claims against it had been severed.

. La.Rev.Stat. 22:2018.

. Some of the plaintiffs testified that, as a result of the collection efforts directed at them, they paid a few hundred dollars to the providers to ensure that their credit rating was not harmed.

. Bankers filed an Amicus Curiae brief, presenting several more arguments to support reversing the judgment.

. The three instances occurred during end-of-the-year holidays in which case the delay never exceeded thirty days.

. La.Rev.Stat. 22:2018 provides:
A. Every contract between a health maintenance organization and a provider of health care services shall be in writing, and shall set forth that in the event the health maintenance organization fails to pay for covered health care services as set forth in the evidence of coverage, the subscriber or enrollee shall not be liable to the provider for any sums owed by the health maintenance organization.
B. In the event that the contract has not been reduced to writing as required by this Section or that the contract fails to contain the required prohibition, the contracting provider shall not collect or attempt to collect from the subscriber or enrollee sums owed by the health maintenance organization.
******
D. Providers may pursue collection from any patient for services rendered, including emergency services, provided by any health care provider which are not covered under the health maintenance organization contract.

. La.Rev.Stat. 22:657(G) states:
Enrollee claims for reimbursement of covered services arising under the terms of health maintenance organization subscriber agreements shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the subscriber agreement, are furnished to the health maintenance organization unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. Failure to comply with the provisions of this Section shall subject the health maintenance organization to a penalty payable to the enrollee of double the amount of the benefits due under the terms of the policy or contract during the period of delay, together with attorney fees to be determined by the court ... (emphasis added).