850 So.2d 924 (2003)
McKOIN STARTER AND GENERATOR, INC., Plaintiff-Appellant,
v.
SNAP-ON CREDIT CORPORATION and Sun Electric Corporation, Defendants-Appellees.
No. 37,210-CA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
Rehearing Denied August 14, 2003.
Neal G. Johnson, Lafayette, for Appellant.
Taggart, Morton, Ogden, Staub, Rougelot & Obrien, LLC, by Kevin M. Wheeler, Michael W. Hill, New Orleans, for Appellees.
Before BROWN, DREW and MOORE, JJ.
*925 DREW, J.
This appeal by McKoin's Starter & Generator Service, Inc., arises from a judgment sustaining an exception of venue on behalf of defendants, Snap-On Credit Corporation and Sun Electric Corporation. Defendants have answered the appeal seeking damages for frivolous appeal. We reverse and remand, rejecting defendants' demand for damages.

FACTS
McKoin is a small business located in Monroe, Louisiana. Sometime in 1995, Jack McKoin, on behalf of the business,[1] executed a contract with Sun to purchase a piece of automotive diagnostic equipment and its related software for an agreed price of $29,457.75. The description of this equipment in the agreement reads "MCS2500400," and the serial number of the equipment is given as "1193A0114." This agreement is undated, but the parties agree that it was executed in early December 1995. The back of this agreement sets out the terms and conditions of the sale and provides, in part:
15. Choice of Law. This Agreement shall be deemed to have been made in Crystal Lake, Illinois, regardless of the order in which the signatures of the parties shall be affixed, and the validity, performance and construction of this Agreement shall be governed by the laws of the State of Illinois.
PURCHASER AGREES TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF ILLINOIS IN ANY ACTION TAKEN BY SELLER RELATING TO THIS AGREEMENT OR ANY PROVISIONS, RIGHTS OR REMEDIES HEREOF. PURCHASER FURTHER AGREES THAT ANY ACTION TAKEN BY PURCHASER AGAINST SELLER RELATING TO THIS AGREEMENT OR ANY PROVISIONS, RIGHTS OR REMEDIES HEREOF SHALL BE TAKEN IN THE COURTS OF THE STATE OF ILLINOIS AND SHALL NOT BE TAKEN IN ANY OTHER JURISDICTION. PURCHASER RECOGNIZES THAT THIS COVENANT IS AN ESSENTIAL PROVISION OF THIS AGREEMENT, THE ABSENCE OF WHICH WOULD MATERIALLY ALTER THE CONSIDERATION GIVEN BY PURCHASER TO SELLER HEREUNDER. PURCHASER HEREBY WAIVES TRIAL BY JURY. (Emphasis and capitalization in original.)

This provision is the fourth of four provisions (out of 18) that are at least partially highlighted and printed in all capital letters. The sale agreement also provides in part in Section 11 that, "No action resulting from or arising out of any claimed breach of this Agreement may be brought by either party more than 2 years following the date of original invoice of the Equipment." In Section 3, the sale agreement further specifies that payment terms are net 30 days from the date of the invoice.
For reasons not plain from the face of the documents, on December 26, 1995, McKoin executed a document styled "Equipment Lease" with Snap-On Credit. This second contract provided that McKoin was leasing the equipment, bearing the same model and serial numbers as the equipment in the sale agreement, from Snap-On Credit for 60 months with the *926 final "buyout" payment to be $1.00. Sun is not mentioned in this agreement. On its front, the lease agreement provides in part that:
LESSEE HAS KNOWLEDGE OF, AND HAS BEEN OFFERED THE EQUIPMENT AT ITS CASH PRICE AND HAS ELECTED TO LEASE THE EQUIPMENT IN LIEU THEREOF.
The lease agreement provides on its reverse that:
6. Ownership.
6.1. The Equipment is, and shall at all times be and remain, personal property, and title thereto shall remain in Lessor exclusively, and Lessee shall have no right, title or interest therein except as expressly set forth in this Lease....
6.2. Upon complete performance by Lessee of all of the terms and conditions of this Lease on its part to be performed, including full payment of all amounts due under this lease, Lessor will transfer title of the Equipment to Lessee, and will deliver, on Lessee's written request, written evidence of the transfer of such title.
This agreement had no choice of law provision but specified on its reverse that:
18. This Lease shall be construed in accordance with the laws of the state of location of the Equipment as set forth above.
The agreement further provides in Section 19, in part, that:
This constitutes the entire agreement of the parties hereto and no waivers or modifications shall be valid unless in writing and signed by both parties.
In 1996, McKoin filed suit against Sun and Snap-On Credit in the Fourth Judicial District Court, Ouachita Parish, Louisiana. Paragraph 8 of McKoin's petition specifies:
The total consideration for the sale was $29,457.75, for which Petitioner tendered a down payment of $1,282.12. The remainder of the consideration was represented by a credit sale agreement with Snap-On.... Under the terms of such agreement, Petitioner was required to purchase property casualty insurance for $1,045.00, and pay incidental charges of $30.00. Pursuant to said credit sale agreement, Petitioner paid installments in the amount of $6,855.86.
McKoin alleged that it was never able to get the equipment to work properly or in accordance with promised specifications and that Sun had failed to cure the problems and had finally picked up the equipment. McKoin further alleged that Snap-On Credit was the subsidiary of Sun and that both agreements were executed in Ouachita Parish. McKoin demanded rescission of the sale, refund of payments made and damages and attorney fees.
In response, Sun and Snap-On Credit filed an exception of venue. In the exception, the defendants urged that they were both subsidiaries of Snap-On Tools Company. The defendants urged that the choice of law provision in the Sun contract was enforceable as to both Sun and Snap-On Credit and that any lawsuit in this matter must be brought in Illinois. McKoin disagreed and noted that the contract was executed in Louisiana and that the plaintiff and all its witnesses are located in Louisiana. According to the minutes of court, on February 24, 1997, the court heard evidence on the exception and took the matter under advisement. No transcript of this hearing appears in the record. The court did not rule on the exception, and over the next two years, McKoin and Sun/Snap-On Credit filed supplemental memoranda in support of, and in opposition to, the venue exception. In their third supplemental memorandum in support *927 of their exception, defendants asserted:
On or around December 1, 1995, Jack McKoin undeniably executed a Sale Agreement for the purchase of automotive diagnostic equipment ("equipment") from Snap-On ("the Contract").... The total consideration for the sale was $29,457.75. See Plaintiff's Petition at § 8.... On December 26, 1995, once it became apparent that plaintiff did not have the requisite funds to pay the entire purchase price, or otherwise was unable to procure financing, it entered into a credit sale agreement with Snap-On Credit Corporation.... The sole purpose of that credit sale agreement, however, was to provide financing to plaintiff for the purchase price of the previously sold equipment. See Plaintiff's petition at § 8.
Emphasis in original.
On March 14, 2002, the court signed a judgment sustaining the exception of venue based on the provision in the first contract. The court noted that, "there was also testimony at the hearing that Jack McKoin may not have read the back of the contract when he signed it...." The court found that McKoin had not carried its burden of proving the forum selection clause was invalid. McKoin thereafter filed a motion for new trial. The defendants responded with legal arguments to the contrary, and further stipulated that they would waive their defenses of prescription for a period not to exceed 30 days from the entry of judgment denying the motion for new trial. The court denied the motion for new trial and McKoin now appeals.

DISCUSSION
In this case, there are two contracts binding McKoin to two different entities with reference to the same piece of equipment. The trial court relied on language in the earlier agreement between McKoin and Sun and held that the parties had agreed to litigate their disputes in Illinois.
An appellate court must render its judgment upon the record on appeal. La. C.C.P. art. 2164. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments, and other rulings, unless otherwise designated. La. C.C.P. art. 2128. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Reed v. Peoples State Bank of Many, 36,531 (La.App.2d Cir.3/5/03),6 839 So.2d 955. Statements in appellate briefs are not evidence. State in Interest of R.C. v. Clarke, 33,023 (La.App.2d Cir.10/27/99), 743 So.2d 843. As noted, this court has no transcript of the 1997 hearing in this matter, so our decision is based upon the record as it stands including the exhibits.
The contract of sale between McKoin and Sun undeniably contains a forum selection clause limiting venue to Illinois. Forum selection clauses are legal and binding, and one seeking to set aside such a provision bears a heavy burden of proof. Such clauses are prima facie valid and should be enforced unless the resisting party clearly proves that enforcement would be unreasonable and unjust, or that the clause arises from fraud or overreaching, or that enforcement would contravene a strong public policy of the forum where the suit is brought. Pitts, Inc. v. Ark-La Resources, L.L.P., 30,867 (La. App.2d Cir.8/19/98), 717 So.2d 268.
However, the forum selection clause in this case does not exist in a vacuum, but instead is a part of the first of two contracts between McKoin and one of the two related Snap-On Tools defendants. The *928 first contract in early December 1995 was a contract of sale, and it appears that McKoin and Sun agreed on the thing to be sold and the price to be paid. This agreement thus constituted a completed sale, La. C.C. art. 2456, and the parties were bound by the terms of the agreement, including the forum selection clause and the requirement that payment be made within 30 days.
Thereafter, according to the defendants, McKoin was unable to pay Sun the full amount of the purchase price. There is no evidence in the record to suggest that Sun attempted to enforce its rights under the contract of sale in an Illinois forum. Instead, the company made arrangements for the transaction to proceed through Snap-On Credit. Although the defendants characterize the second transaction as a credit sale, and the plaintiff's petition likewise refers to a credit sale, the contract the parties actually executed is plainly a financed lease. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith. La. C.C. art.1983. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046.
The object of the lease is the same as the object of the original sale. The question is whether the forum selection clause in the contract of sale is enforceable despite the subsequent execution of the contract of lease.
We hold that the execution of the second agreement extinguished the parties' rights and liabilities under the contract of sale, and the trial court made a legal error in concluding otherwise. Although Sun and Snap-On Credit are separate entities, they are both apparently subsidiaries of the same company, Snap-On Tools. In the respective agreements, Sun and Snap-On Credit both asserted ownership of the diagnostic equipment. Sun, as the seller in the first agreement, asserted that it was the owner by virtue of the sale itself; La. C.C. art. 2452 provides that "The sale of a thing belonging to another does not convey ownership." In the Snap-On Credit lease, Snap-On Credit was to retain ownership of the equipment as is traditional under a lease, and the agreement did not specify that the equipment belonged to Sun. La. C.C. art. 2681. Such contracts are explicitly approved by La. R.S. 9:3302, which provides:
It is declared to be the policy of this state to encourage and foster the leasing of movable property to individuals and businesses, thus promoting economic growth and development. To this end, financed leases, which have previously been construed as conditional sales transactions, are hereby recognized as valid and enforceable in this state.
By virtue of retention of title with the lessor, financed leases are distinctly different from a contract of sale.
The lease does not explain how Snap-On Credit, rather than Sun, became the owner of the equipment after the sale from Sun to McKoin was perfected. The defendants assert in brief that the lease agreement was simply a method of financing the previously completed sale, but the terms of the written lease agreement do not support that assertion, and statements in brief do not constitute evidence. Whatever the relationship between the defendants, Snap-On Credit's assertion of ownership of the equipment in the lease establishes that these related defendants considered the first contract impossible to conclude by McKoin's performance at the time the lease was executed.
La. C.C. art. 1879 provides:

*929 Novation is the extinguishment of an existing obligation by the substitution of a new one.
La. C.C. art. 1880 provides:
The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.
La. C.C. art. 1881 provides:
Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.
Novation takes place also when the parties expressly declare their intention to novate an obligation.
Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.
By the abandonment of the perfected contract of sale and the subsequent perfection of the lease agreement, the defendants novated the original obligation. The parties thus agreed that a new performance by McKoin (payment over time of the lease to Snap-On Credit) was to be substituted for the prior sale agreement requiring payment of the price of the equipment to Sun within thirty days of the invoice. This is not merely the execution of a new writing or the giving of security; the original sale was either terminated or rendered impossible by the subsequent lease and thus was extinguished. The intent to extinguish the original obligation was clear; as noted, the lease agreement provided that:
This constitutes the entire agreement of the parties hereto and no waivers or modifications shall be valid unless in writing and signed by both parties.
The lease does not in any respect incorporate the terms of the prior agreement, nor could it incorporate the venue selection provision in the contract of sale. La. R.S. 9:3303 provides, in part:
A. This Chapter shall apply to all leases of movable property located in this state, whether the property is initially leased in Louisiana or subsequently moved into this state.
B. Subject to the provisions of R.S. 9:3303(D), (E), and (F), a lease agreement affecting movable property located or to be located in Louisiana may provide that the transaction will be governed under the substantive laws of the state in which the lease is entered into or governed under the substantive laws of the state of the lessor's residence, principal office, or incorporation or governed under the substantive laws of any other state having significant contacts with the transaction....
. . . .
F. The following agreements by Louisiana lessees are invalid with respect to leases of movable property, or any modifications thereof, to which this Chapter applies:
(1) Agreements in which the lessee consents to the jurisdiction of another state.
(2) Agreements that fix venue.
Paragraph F prohibits any provision purporting to establish jurisdiction or venue in another state.

CONCLUSION
Because the lease agreement by its very nature, and by its terms, is fundamentally inconsistent with the prior contract of sale, the lease operated as a novation of the contract of sale. Accordingly, the *930 terms of the contract of sale were not incorporated into the contract of lease. Because the contract of lease did not, and legally could not, contain a forum selection clause, the trial court erred in sustaining the defendants' exception of venue. Accordingly, the trial court's ruling is reversed and this case is remanded for further proceedings. Defendants' demand for damages for frivolous appeal is denied. Costs of this appeal are assessed to defendants, Sun Electric Corporation and Snap-On Credit Corporation.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before BROWN, GASKINS, DREW, MOORE, and TRAYLOR, JJ.
Rehearing denied.
NOTES
[1] The purchaser business name on this contract is given as "McKoin's Starter & Alt Service" but there is no suggestion that this is a different entity from "McKoin's Starter and Generator Service, Inc."