948 So.2d 1163 (2007)
TOWN OF HOMER, d/b/a Homer Memorial Hospital, Individually and as Assignee of Linda Tuggle, et al., Plaintiffs-Respondents
v.
UNITED HEALTHCARE OF LOUISIANA, INC., Defendant-Applicant.
No. 41,512-CW.
Court of Appeal of Louisiana, Second Circuit.
January 31, 2007.
Rehearing Denied February 22, 2007.
McGlinchey Stafford, PLLC, by Errol J. King, Jr., Layna S. Cook, Baton Rouge, for Applicant.
Colvin, Weaver & Cerniglia, by James H. Colvin, Pamela N. Breedlove, Shreveport, for Respondents.
Before WILLIAMS, STEWART, CARAWAY, LOLLEY & SEXTON (Pro Tempore), JJ.
SEXTON, J.
This matter comes before the court on the supervisory writ application of Defendant, *1165 United Healthcare of Louisiana, Inc. ("United"), seeking review of a judgment denying its exception of improper venue in a suit filed against it by the Town of Homer, d/b/a Homer Memorial Hospital ("Homer Memorial" or "the hospital"), Individually and as Assignee of Linda Tuggle, et al. This court granted certiorari and docketed the case for decision on the venue issue. For the reasons stated herein, the writ is made peremptory, Homer Memorial's claims for penalties and attorney fees are dismissed with prejudice and the judgment of the trial court is reversed as to the remaining claims for damages. The case is transferred to East Baton Rouge Parish.

FACTS AND PROCEDURAL BACKGROUND
United is a domestic health management organization ("HMO") licensed under Louisiana law. On May 1, 1997, United entered into a Participation Agreement with Homer Memorial. Pursuant to this agreement, the hospital (the provider) would provide healthcare to United's members, who were also employees of the hospital, and United would pay Homer Memorial for these medical services. United provided coverage for the services rendered to its members by Homer Memorial via a group insurance policy entitled United Healthcare Choice Plus. Under this HMO plan, the employee/members were responsible only for co-payments, the annual deductible (if any) and charges for non-covered services.
On August 9, 2005, the Town of Homer, d/b/a Homer Memorial Hospital, filed a petition in Claiborne Parish for damages and penalties against United for breach of contract and failure to pay for services rendered to its employees within 60 days. The Town of Homer filed the petition on behalf of Homer Memorial, individually (the Town of Homer owns the hospital) and as assignee of numerous named individuals who were current or former employees of the hospital to whom the hospital had rendered medical services and most of whom, according to the hospital, resided in Claiborne Parish. The hospital asserts that there are two different claims: (1) breach of the Participation Agreement and (2) failure to pay benefits for services rendered to the specifically named employee/members from whom the hospital had written Assignments of Benefits and Statutory Penalties ("special assignments" or "specially assigned claims"). Specifically, on the "first" claim, Homer Memorial seeks $68,786.45 in "unpaid benefits pursuant to its provider contract" (the Participation Agreement), plus attorney fees and costs. These damages are characterized by Homer Memorial as damages sustained by the hospital for the alleged breach of contract (the Participation Agreement) by United.
The "second" claim is based on $12,498.94 in unpaid services rendered to the specifically named employee/members from whom Homer Memorial obtained these special assignments. Thus, the hospital seeks $24,997.88 (double the claim amount) for benefits and penalties for the nonpayment of these specially assigned claims, as well as attorney fees under La. R.S. 22:657. All of the hospital's claims are based upon United's alleged arbitrary failure to pay the health insurance benefits due to the hospital for medical services rendered to United's members.
On September 21, 2005, United filed a declinatory exception of improper venue, asserting that the Participation Agreement between the hospital and United contained a mandatory and binding forum selection clause providing that the parties mutually agreed that venue for any legal action would be the Parish of East Baton Rouge. *1166 The language of the forum selection clause in the Participation Agreement states:
10.8 Governing Law. To the extent not preempted by federal law, this Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. It is agreed between the parties that proper venue for any legal action shall be in the Parish of East Baton Rouge. (Emphasis added.)
Homer Memorial responded with several arguments in opposition to the exception. The hospital asserted that the clause was permissive in nature and did not preclude venue in Claiborne Parish. Instead, according to the hospital, the clause merely provided that the parties consented to venue in East Baton Rouge Parish if the other party filed suit there. Additionally, Homer Memorial argued that it was seeking recovery of $68,786.45 in benefits owed to it for services rendered to other individuals and that the specially assigned claims by the former and current employees of the hospital were not subject to any venue clause. In this regard, the hospital relied on La. C.C.P. art. 76, which provides that an action on a health and accident insurance policy may be brought in the parish where the insured is domiciled or in the parish where the accident or illness occurred. The hospital further argued that, where there are multiple venues available, a plaintiff may choose any available venue; thus, all claims alleged in Homer Memorial's petition could be brought in Claiborne Parish.
At argument on the exception, Homer Memorial cited the trial court to La. R.S. 13:5104(B), which provides:
B. All suits filed against a political subdivision shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises.
Homer Memorial argued that, had the parties not agreed on the permissive venue clause, the above provision would have operated to create an exclusive venue of Claiborne Parish for all disputes between the parties. It presented this argument as a proposed rationale for the parties to have agreed that East Baton Rouge Parish would be an additional proper venue for disputes. United countered by emphasizing that this statute is inapplicable because it deals with suits against political subdivisions and not suits filed by political subdivisions, such as the instant case.

ACTION OF THE TRIAL COURT
The trial court accepted Homer Memorial's arguments and denied the exception of improper venue. The court provided several reasons for so ruling. First, the trial court noted that the breach of contract claim is obviously covered by the forum selection clause in the Participation Agreement making East Baton Rouge Parish the proper venue for that claim. Next, however, the trial court concluded that the specially assigned claims are not subject to the forum selection clause in the Participation Agreement because the assignors were not parties to the contract between United and Homer Memorial. Thus, the trial court found that Claiborne Parish was a proper venue for those claims under La. C.C.P. art. 76. Since there were two possible venues, the trial court concluded that venue in Claiborne Parish was proper for all claims.
In addition, the trial court recognized that La. R.S. 13:5104(B) is not directly applicable to the case sub judice because this is a suit by a political subdivision and not against it. The court, nevertheless, opined that the statute "expresses an underlying policy that suits involving political *1167 subdivisions should be heard in the parish where the political division is located." A reading of the oral ruling and written reasons indicates that the trial court, in so ruling, was forecasting the possibility of a reconventional demand or counterclaim filed by Homer Memorial, despite counsel's statement that such was not being contemplated by the hospital. This eventuality would then give the Town of Homer the ability to move the suit back to Claiborne Parish under section 5104(B). Citing judicial economy, the trial court denied the Town of Homer's exception and the suit remained in Claiborne Parish. This writ/appeal ensued.

DISCUSSION
Venue is a question of law; and, therefore, on review, the appellate court conducts a de novo review of the record. Nitro Gaming, Inc. v. D.I. Foods, Inc., 34,301 (La.App. 2d Cir.11/1/00), 779 So.2d 817.
The initial determinations that must be made in this matter are whether the forum selection clause in the Participation Agreement is mandatory or permissive and whether it is valid and enforceable. Forum selection clauses can be either mandatory or permissive. For a forum selection clause to be mandatory, it must clearly establish the parties' intent to make the chosen venue exclusive. See City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501 (5th Cir.2004), cert. denied, 543 U.S. 1187, 125 S.Ct. 1396, 161 L.Ed.2d 189 (2005). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.
We find the forum selection clause at issue to be clear and explicit. The clause expressly states that the proper venue for any legal action shall be East Baton Rouge Parish. There is no ambiguity in this mandatory provision.
After determining the mandatory or permissive nature of the clause, we must determine whether it is enforceable. Forum selection clauses are legal and binding, and one seeking to set aside such a provision bears a heavy burden of proof. Pitts, Inc. v. Ark-La Resources, L.P., 30,897 (La.App. 2d Cir.8/19/98), 717 So.2d 268, citing Digital Enterprises, Inc. v. Arch Telecom, Inc., 95-30 (La.App. 5th Cir.6/28/95), 658 So.2d 20. Such clauses are prima facie valid and should be enforced unless the resisting party clearly proves that enforcement would be unreasonable and unjust, or that the clause arises from fraud or overreaching or that enforcement would contravene a strong public policy of the forum where the suit is brought. McKoin Starter and Generator, Inc., v. Snap-On Credit Corp., 37,210 (La. App. 2d Cir.6/25/03), 850 So.2d 924, writ denied, 03-2605 (La.12/12/03), 860 So.2d 1156, citing Pitts, supra. There is no indication in the record that the forum selection clause is overreaching, unreasonable or unjust and no allegation of fraud has been advanced, nor has any evidence of fraud been adduced. Accordingly, we find that the forum selection clause is valid and enforceable.
We must now examine the claims asserted in this case and the proper venue therefor.
The trial court accepted Homer Memorial's characterization of its "breach of contract claim," admittedly arising out of the Participation Agreement. The court held that this claim, therefore, was clearly governed by the forum selection clause, indicating its finding that the clause, as to claims between United and Homer Memorial, was mandatory and enforceable. *1168 We agree. We further find, however, that all damage claims asserted by the hospital (whether labeled "breach of contract" or allegedly based on assignments of benefits) arise under the Participation Agreement and are, therefore, subject to the forum selection clause.
As previously noted, all damage claims asserted by Homer Memorial in the petition represent unpaid benefits owed by United to the hospital under the Participation Agreement. United's obligation to pay its provider is contractual and is clearly defined in the Participation Agreement, which provides that any legal action by the hospital to recover unpaid benefits can only be brought against United or its designated Payor. The Participation Agreement expressly prohibits Homer Memorial from seeking payment (exceeding copayments, payments towards the annual deductible and payments for non-covered medical services) from its employee/members. HMOs, by their nature, are designed to be "paperless" claims systems. In fact, the hospital, as contracting provider, is prohibited by statute from maintaining "any action at law against" a member to collect sums owed by the HMO. La. R.S. 22:2018(C); DeSalvo v. Orleans Parish School Board, 97-1339 (La.App. 4th Cir.4/8/98), 711 So.2d 371.[1] Since Homer Memorial's recourse against the HMO for unpaid benefits is contractual in nature, any assignments of insurance benefits by the employee/members to the hospital, whether general or special, are superfluous. The benefit payments were owed to the hospital, not the members. Stated another way, United's obligation is to pay Homer Memorial, not the employee/members, and the obligation is rooted in the Participation Agreement, not the assignments of benefits executed by the employee/members.[2] In summary, we find that all damage claims asserted by Homer Memorial against United are breach of contract claims for failure to pay benefits due the hospital under the Participation Agreement and, therefore, are subject to the forum selection clause and must be brought in East Baton Rouge Parish.
Having established that the damages claims for unpaid benefits are subject to the forum selection clause, the only remaining question concerns the assigned claims for penalties and attorney fees under La. R.S. 22:657. That statute provides, in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject *1169 the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, excepting a justice of the peace court, shall have jurisdiction to try such cases.
This statute has been held inapplicable to claims by insured/members where the plaintiffs received medical services under an HMO plan. DeSalvo, supra. In DeSalvo, the court adopted the position of the HMO that 22:657 was not designed to cover a situation involving an HMO because the participants are not liable for any out-of-pocket expenditures and are not even responsible for filing claims. The court opined that, if the statute was to apply to any HMO based claims, it would only be those filed by members seeking reimbursement under the terms of a group policy. An example of such a claim would be for excess copayments made by the member, not for benefits due the provider from the HMO under a provider contract, such as the Participation Agreement in the case sub judice. We agree with the rationale of DeSalvo and hold that the penalty provision of 22:657 would not be available to the employee/members in this case seeking penalties for failure to pay benefits to the provider.
An assignor cannot assign any rights greater than that which he held. Carte Blanche Corp. v. Pappas, 216 So.2d 917 (La.App. 2d Cir.1968); Del-Remy Corp. v. Lafayette Insurance Co., 616 So.2d 231 (La.App. 5th Cir.1993), writ denied, 617 So.2d 941 (La.1993). Since the employee/members could not seek penalties and attorney fees under 22:657 against the HMO, they could not assign any such rights to Homer Memorial. For this reason, we supply, on our own motion, and sustain an exception of no cause of action regarding the penalties and attorney fee claims under La. R.S. 22:657. La. C.C.P. art. 927; Johnston v. Lloyds Ins. Co., 37,489 (La.App. 2d Cir.8/20/03), 853 So.2d 738, writ denied, 03-2905 (La.1/9/04), 862 So.2d 988.
In summary, we find that the employee/members had no cause of action against United under La. R.S. 22:657 and, therefore, no such claim was transferred to Homer Memorial through the special assignments. The remaining damages claims asserted by Homer Memorial against United are subject to the forum selection clause, making venue proper for those claims only in East Baton Rouge Parish.
When an action is brought in a court of improper venue, an appellate court has the discretion to dismiss the action or, in the interest of justice, transfer it to a court of proper venue. La. C.C.P. art. 121. We elect to transfer this case to its proper venue.

DECREE
For the foregoing reasons, on this court's motion, an exception of no cause of action is hereby supplied and sustained as to the Town of Homer d/b/a Homer Memorial Hospital's claims for penalties and attorney fees under La. R.S. 22:657, thereby dismissing those claims with prejudice. As to the remaining claims, the judgment of the trial court overruling the declinatory exception of improper venue is reversed. Judgment is rendered sustaining the exception and remanding this action to the Civil District Court for the Parish of East Baton Rouge for further proceedings. The clerk of this court is ordered to transfer the record of these proceedings to the Clerk of Court for Civil District Court, East Baton Rouge Parish.
*1170 Costs in the amount of $69 are assessed to Plaintiff/Appellee, The Town of Homer, d/b/a Homer Memorial Hospital, Individually and as Assignee of Linda Tuggle, et al. See La. R.S. 13:5112.
REVERSED, RENDERED AND TRANSFERRED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent from the majority's ruling.
At the time the parties entered this disputed contract, our law governing venue for suits against the Town of Homer (hereinafter the "Town") provided as follows:
All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises.
La. R.S. 13:5104(B). The test of this venue provision for bringing suits on a contract in the "parish in which the cause of action arises," did not guarantee that the Town could be sued in United's "home base" parish of East Baton Rouge. Contrast, National Linen Service v. City of Monroe, 39,199 (La.App. 2d Cir.12/15/04), 889 So.2d 1186 and UDS Management Corp. v. Ebarb Waterworks District No. 1, 32,103 (La.App. 2d Cir. 2/24/99), 728 So.2d 952, writ denied, 99-1175 (La.6/4/99), 744 So.2d 630. Thus, to avoid any venue issue over whether a United claim against the Town might be prosecuted in East Baton Rouge, United's contract clearly purports to give United the right to sue the Town in that parish by its provision "that proper venue for any legal action shall be in the Parish of East Baton Rouge."
This background for United's contract gives the disputed provision a meaning and shows how it was to be applied for United's benefit had it become necessary to sue the Town. But did this contractual provision inserted for United's benefit take away the Town's right for its "home base" venue in a suit against United? I don't think so.
For most actions, venue is clearly now recognized in Louisiana as a multifaceted and flexible legal concept. The above-quoted venue statute for political subdivisions provides multiple choices for venue. In addition to the general venue grant of Article 42 of the Code of Civil Procedure, the articles following in the code provide other venues that may be used as the situs of a suit other than the Article 42 venue. Article 45 of the code sorts through the code's multiple venue allowances giving to a few exclusivity while on the whole allowing the plaintiff to bring the action "in any venue provided by any applicable article." As noted by our supreme court, "[i]ndeed, Article 42, the general venue statute, employs the word `shall' to define the general venue for different types of defendants, yet is subject to the numerous statutory exceptions." Underwood v. Lane Memorial Hosp., 97-1997 (La.7/8/98), 714 So.2d 715, 717. Thus, "proper venue" for most suits in Louisiana is far from a singular narrow concept.
The majority misses the import of this broad notion for venue and effectively redrafts United's contract with its finding that "the clause expressly states that the proper venue . . . be East Baton Rouge Parish." (Emphasis added.) Despite United's desire for East Baton Rouge Parish to be "proper venue" for any suit, it never named that parish to be "the" only proper venue for suits between the parties. The following observation for statutory *1171 construction of the venue articles of the Code of Civil Procedure by the First Circuit Court of Appeal holds true for United's drafting of its contract:
Plaintiffs' arguments ignore the fact that there is one significant difference in the language of the two provisions. Article 593 provides a class action be brought in a parish of proper venue as to the defendant, which the Supreme Court interpreted in Cacamo to mean any parish of proper venue. In contrast, article 614 provides that a shareholder's derivative action shall be brought in the parish of proper venue as to the corporation. "The" is a definite article, suggesting there is only one parish of proper venue as to the corporation in derivative actions.
H.R. 10 Profit Sharing Plan v. Mayeux, 03-0691 (La.App. 1st Cir.9/17/04), 893 So.2d 887, 895, writ denied, 05-0868 (La.5/13/05), 902 So.2d 1031 (emphasis in original). United did not draft its contract to make East Baton Rouge Parish "the" exclusive venue governing this dispute.
Finally, United's contractual choice of venue for its benefit has been under a legislative cloud from inception. La. R.S. 51:1407 provides, in pertinent part, as follows:
It being against the public policy of the state of Louisiana to allow a contractual selection of venue or jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.
Although this provision has been argued by United to be limited only to the context of unfair trade practices, a legislative concern that rises to the level of a stated "public policy" prohibition would not be expected to be limited in any manner unless the legislature expressly narrows the policy. Also, this recent public policy expression of the legislature may serve to explain the somewhat obscure meaning of the Code of Civil Procedure Article 44(A) which states:
An objection to the venue may not be waived prior to the institution of the action.
Whatever the meaning of this legislative "public policy," it is clear that United's contract should be strictly construed to determine if the Town waived its "home base" venue in this case and the provision must be interpreted against the party who furnished its text. Proper venue is East Baton Rouge and Claiborne Parishes because United's contract does not attempt to provide otherwise.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, LOLLEY and SEXTON (Pro Tempore), JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] We find interesting that the special assignments executed by the employee/members cite consideration for the assignment as "Homer Memorial Hospital agreeing not to pursue me for the balance due for the services rendered. . . ." Again, such a suit is expressly prohibited by La. R.S. 22:2018 and the Participation Agreement.
[2] United's contractual obligation to its members is to make healthcare available through network providers pursuant to the United Healthcare Choice Plus Plan (the group plan) and to pay those providers for services rendered pursuant to its Participation Agreement with those providers.