|1LANDRIEU, Judge.
The City of New Orleans appeals the declaratory judgment rendered in favor of the plaintiff, Darlene Rizzuto, stating that the provisions of La.Rev.Stat.Ann. § 22:657 (West Supp.1994) apply to the City of New Orleans, a political subdivision of the State of Louisiana, with regard to its self-funded health care plan. We are asked to determine whether La.Rev.Stat.Ann. § 22:657 controls the conduct of a self-funded health care plan organized by a political subdivision of the State of Louisiana.
FACTS
As an employee of the City of New Orleans, Darlene Rizzuto chose to participate in the City’s PPO health care plan in November 1991.[1] During the years 1991-92, Ms. Rizzu-to has filed numerous claims for health care benefits under the plan. Most of these claims remained unpaid for substantially more |2than 30 days after a proper proof claim was filed with the City plan.[2] In fact, some claims allegedly still remain unpaid, well over two years after treatment was rendered.
Alleging that the City’s self-funded health care plan failed to pay her benefits timely as mandated by § 22:657, plaintiff filed this action on January 5, 1998, seeking benefits, damages, penalties and attorney’s fees from the City of New Orleans. Thereafter, the plaintiff filed a petition for declaratory judgment on March 26,1993, to determine whether the penalty and attorney fees provision of § 22:657 applies to the City of New Orleans as a political subdivision of the State.
Following a hearing, the trial court rendered judgment in favor of the plaintiff stating that the provisions of § 22:657 apply to the City of New Orleans, a political subdivision of the State of Louisiana, with regard to its self funded health care plan. This appeal ensued.
DISCUSSION
In its only assignment of error, the City of New Orleans contends that the trial court erred in granting the plaintiffs declaratory judgment because the law specifically provides that § 22:657 does not apply to the City or other political subdivisions. The City maintains that there was no legislative intent to include political subdivisions in § 22:657. The plaintiff, on the other hand, argues that inclusion of the State of Louisiana in § 22:657(C) automatically extends the statute to self-funded health care plans run by political subdivisions of the State. They allege their position was supported in Caraway v. Royale Airlines, Inc. 579 So.2d 424 (La.1991) where the Louisiana Supreme Court | ¡¡held a self-funded health care plan, created by the City of Bossier City, was hable for penalties and attorney’s fees under La.Rev.Stat.Ann. § 22:657.
In response to the plaintiffs argument, the City contends that (1) it is not an insurer as defined by and regulated under the Insurance Code (La.Rev.Stat.Ann. § 22:1 et seq.) and (2) the provisions of § 22:657 do not apply to its self-insured health care plan. The City further argued that the Caraway court did not discuss the applicability of § 22:657 to the City, and therefore, its holding has no precedential value.
In Caraway, the Louisiana Supreme Court held the City of Bossier City (CBC) was without just and reasonable grounds in fail *343 ing to pay benefits to plaintiff under its plan, and therefore, the trial court was not clearly wrong in casting CBC for penalties and attorney fees under La.Rev.Stat.Ann. § 22:657(A). Charles Spraggins, an employee of CBC, and his daughter, Amanda, had in effect a health care plan funded by the city. Plaintiff Sandra Caraway, the child’s mother, was employed by Royale Airlines, Inc. and both she and Amanda were covered with hospitalization by the Royale Airlines, Inc. Employee Benefit Plan and Trust. During 1985-86, numerous claims were presented to CBC who in turn contacted the administrator of the Royale plan, who accepted primary coverage responsibilities and paid the relatively small claims amounts. However, in 1986, medical expenses for Amanda’s surgery and complications totalled $78,165.65 and Ro-yale refused to pay the claim; the CBC plan paid only $1166 in benefits, the amount it alleged it was responsible for as secondary plan. As a result of the foregoing, Ms. Caraway filed suit for health insurance benefits against Royale Airlines, Inc., CBC, and Charles Spraggins. She alleged that both Royale and CBC had in effect policies of health and hospitalization covering Amanda at the time of her surgery, and that the failure and refusal of these defendants to pay was arbitrary, capricious Uand without probable cause, and, as such, both CBC and her own primary insurer, Royale Airlines, Inc., should be cast for penalties and reasonable attorney fees for failure to pay these expenses. Prior to the trial, Royale filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court. That court issued a stay, thus removing Royale from the proceedings.
La.Rev.Stat.Ann. § 22:657 (West Supp. 1994) states, in pertinent part, that:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist_ Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court....
¾: ⅜: ⅜ ⅝ ⅜ ⅜
C. Any person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans.
The above statute mandates the imposition of penalties on any entity which fails to timely pay health benefits. The only exclusion from this section is for “collectively bargained union welfare plans other than health and accident plans.” Although Subsection “C” sets forth an illustrative list of included entities within its provisions, it is not an exhaustive list. When the legislature Isincluded the State of Louisiana as one of the entities within the provisions, we find the broad based language also included a self-funded health care plan run by a political subdivision of the state.
To bolster our position that the legislature intended to include the political subdivisions of the state within the statute, we look to the common meaning of the words included in the statute. Black’s Law Dictionary (6th ed. 1990) defines organization as follows: “Organization includes a corporation, government of governmental subdivision or agency, business trust, estate, trust, partnership, or association, two or more persons having a joint or common interest, or any other legal or commercial entity.” See also UCC § 1-201(28) (West 1994); Sewerage and Water Bd. of New Orleans v. Civil Serv. Com’n of City of New Orleans, 496 So.2d 1019, 1029 (La.1986) quoting Civil Serv. Com’n Rule I, *344 § 1.32 (Defining organization unit as “any agency, board, commission, or department of City government that is designed by rule or regulation as a complete governmental unit for purposes of administration of this law”).
La.Rev.Stat.Ann. § 22:657 is very broad. It includes any “corporation or other organization.” Because political subdivisions were not specifically excluded and the State of Louisiana was specifically included, we find that the State’s political subdivisions are bound by § 22:657. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. The City of New Orleans offers as a benefit to its employees, retirees, and their dependents the option of participating in the City’s self-funded health care plan or participating in its preferred provider organization (PPO) health care plan. The administration of the self-funded health care plan is contracted to the Total Benefit Services, a health administration company and, the PPO health care plan was managed by Group Insurance Administration, Inc. (GIA). The City also contracted with Total Benefit Services to review all medical claims submitted for payment by GIA.

. In accordance with the terms of the plan, the insurer was to pay the provider directly.