925 So.2d 1202 (2006)
Kathleen PUMPHREY
v.
The CITY OF NEW ORLEANS.
Darlene Rizzuto
v.
The City of New Orleans.
Fred Farve, Jr.
v.
The City of New Orleans.
Michael Ricks and Vivian Ricks
v.
The City of New Orleans.
Barbara Ellis
v.
The City of New Orleans.
Herbert Craig
v.
The City of New Orleans.
A. Ray Piattoly
v.
The City of New Orleans.
Patrick Murphy
v.
The City of New Orleans.
Ignatius James
v.
The City of New Orleans.
No. 2005-C-979.
Supreme Court of Louisiana.
April 4, 2006.
*1204 Penya Moses-Fields, City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, Thomas A. Robichaux, Heather M. Valliant, Franz L. Zibilich, Assistant City Attorneys, for applicant.
Silbert & Garson, Robert J. Garon, Tamica J. Cryer, New Orleans, William G. Merritt, for respondent.
KNOLL, Justice.
This civil case addresses the legal question of whether La.Rev.Stat. 33:3062(B) exempts the City of New Orleans with regard to its self-funded employee health care insurance plan from the penalty provisions of La.Rev.Stat. 22:657(A). Plaintiffs filed individual suits seeking penalties and attorneys fees for non-payment and/or untimely payment of insurance benefits, which were due and payable to plaintiffs, under the City of New Orleans's self-funded employee health care plan. After consolidation of these suits, the City of New Orleans ("City") filed a petition for declaratory judgment in all of the consolidated cases seeking a declaration that La.Rev.Stat. 33:3062(B) exempted the City with regard to its self-funded health plan from the penalty provisions of La.Rev.Stat. 22:657(A). The district court entered judgment against the City holding La.Rev.Stat. 33:3062 does not exempt the City or its health plan from the provisions of La.Rev.Stat. 22:657. The court of appeal affirmed. We granted writ primarily to resolve the alleged conflict between La. Rev. Stats. 22:657(C) and 33:3062(B) to determine whether La.Rev. Stat. 33:3062(B) exempts the City's health plan from the penalty provisions of La. Rev.Stat. 22:657(A). Pumphrey v. City of New Orleans, 05-0979 (La.12/16/05), 917 So.2d 1085. For the following reasons, we find the provisions of La.Rev.Stat. 33:3062(B) clearly and explicitly exempt the City's health plan from the penalty provisions of La.Rev.Stat. 22:657(A) and render declaratory judgment in favor of the City.

FACTS AND PROCEDURAL HISTORY
On January 1, 1978, the City became self-insured as to health care coverage for its employees and contracted with various *1205 vendors for administrative services in connection with its health care and hospitalization plan. The City offered as a benefit to its employees, retirees, and their dependants, the option of participating in the City's self-funded health care plan or participating in its preferred provider organization (PPO) health care plan. In March 1991, the City entered into a contract with Total Benefits Services ("Total") to administer its health care plan, and then in November 1991, the City entered into a contract with Group Insurance Administration of Louisiana ("Group") to secure medical service discounts through the use of Group's preferred provider network and to manage the PPO health care program. At all times relevant herein, the City has maintained a self-funded health care plan for the benefit of its employees, retired employees, and their families.
This consolidated matter arises out of multiple Petitions for Damages brought on behalf of eligible participants in the City's self-funded health care plan.[1] The plaintiffs, Kathleen Pumphrey, Darlene Rizzuto, Fred Farve, Jr., Michael and Vivian Ricks, Barbara Ellis, Herbert Craig, A. Ray Piattoly, Patrick Murphy, and Ignatius James, are seeking penalties and attorneys fees for non-payment and/or untimely payment of insurance benefits, which were due and payable to plaintiffs, under the plaintiffs' participation in the City's self-funded employee health care plan, in accordance with La.Rev.Stat. 22:657. Plaintiffs alleged more than thirty days had elapsed from the date upon which the plaintiffs submitted written notice and proof of claim on covered medical bills to the City's self-funded health care plan. Plaintiffs further contended the City had arbitrarily and capriciously delayed payment of benefits due or had arbitrarily and capriciously paid claims beyond thirty days after submission. Additionally, plaintiffs alleged the City breached its fiduciary duty of good faith and fair dealings and its contractual duties to the plaintiffs as a result of its arbitrary and capricious failure to pay claims. As a result of the City's actions, the plaintiffs alleged they suffered mental anguish and pain and suffering, all of which entitled them "to recover damages as are reasonable in the premises."
After filing her petition for damages, plaintiff, Darlene Rizzuto, filed a petition for declaratory judgment on March 26, 1993, to determine whether the penalty and attorney fees provision of La.Rev.Stat. 22:657 applies to the City and its self-funded health care plan. The Fourth Circuit *1206 in Rizzuto v. City of New Orleans, 94-1016 (La. App. 4 Cir. 1/19/95), 650 So.2d 341, affirmed the district court's declaratory judgment rendered in favor of plaintiff, which held that the provisions of La.Rev. Stat. 22:657 apply to the City, a political subdivision of the State of Louisiana, with regard to it self-funded health care plan.
The Rizzuto court found the broad based language of La.Rev.Stat. 22:657 mandates the imposition of penalties on any entity, including "corporation and other organization," which fails to timely pay health benefits with the only exclusion for "collectively bargained union welfare plans other than health and accident plans." 94-1016 at p. 4, 650 So.2d at 343. The court noted that although La.Rev.Stat. 22:657(C) sets forth an illustrative list of included entities within its provisions, the list is not exhaustive, and when the Legislature included the State of Louisiana as one of the entities within the provisions, the court found the broad-based language also included a self-funded health care plan run by a political subdivision of the State. Id., at pp. 4-5, 650 So.2d at 343. Relying on a definition of "organization" that includes "government or governmental subdivision or agency," the court concluded the State's political subdivisions are bound by La.Rev. Stat. 22:657 because political subdivisions were not specifically excluded and the State of Louisiana was specifically included. Id., at p. 5, 343-44.
Subsequently, the City and all the plaintiffs filed a joint motion to consolidate, which was granted on July 20, 1998, by order signed by the district court. After consolidation of the cases, the City filed the petition for declaratory judgment at issue in this case, seeking a declaration that La.Rev.Stat. 33:3062 exempts the City with regard to its health care plan from the penalty provisions of La.Rev.Stat. 22:657. The district court found in plaintiffs' favor, reasoning:
The Fourth Circuit upheld the applicability of La. R.S. 22:657 to the City's health plan in Rizzuto v. City of New Orleans, 94-[1016] (La. App. 4 Cir. 1/19/95), 650 So.2d 341. Rizzuto clearly held that La. R.S. 22:657 does apply to the City's health plan and that the City violated the statute. Consequently, the court in Rizzuto ordered the City to pay the proper penalties and attorney's fees.
The original text of La. R.S. 22:657 did not include the term "self-insurers." However, "self-insurers" was added to both the heading and subsection C in the 1979 amendment to the statute. This amendment reveals the legislature's intent that self-funded health insurance plans are to be controlled by La. R.S. 22:675. La. R.S. 22:657 has been amended twice since the enactment of La. R.S. 33:3062; neither amendment repealed subsection C. It is clear that the wording of the text in La. R.S. 22:657, the actions of the legislature, as well as the jurisprudence, contradict the position of the City. Accordingly, this Court finds that La. R.S. 33:3062 does not exempt the City from the provisions of La. R.S. 22:657.
The Court of Appeal affirmed the district court's decision in an unpublished opinion, finding the law of the case doctrine precluded its reconsideration of the appeal:
The City contends, as it did in Rizzuto, that the trial court erred when it held that the provisions of La. R.S. 22:657 apply to the City with regard to its self-funded health care plan. This Court has previously decided that issue [in] Rizzuto. In Rizzuto, this court affirmed the trial judge's holding that La. R.S. 22:657 applied to the City's self-funded health care plan.
In Kiefer v. Southern Freightways, Inc., 95-2037, p. 5 (La.App. 4 Cir. *1207 12/27/96), 686 So.2d 1041, 1046, this Court dealt with the issue of whether a defendant should be barred by the "law of the case" doctrine from re-urging an argument in an appeal which was presented, and ultimately rejected, in a previous appeal even though not all parties were in the appeal at issue were parties in the prior appeal.
* * *
In the present appeal, the law of the case doctrine is being applied "against" the City and the City was, of course, a party at the time of our decision in the previous appeal. The City had a full opportunity to present its argument in the previous appeal. Thus, this court has already decided the exact issue in one of the consolidated cases; the same ruling applies and should be adopted to all of the cases concerning the instant appeal.
This Court granted the City's writ application to determine whether La.Rev.Stat. 33:3062 exempts the City with regard to its health plan from the penalty provision of La.Rev.Stat. 22:657(A) and to resolve the alleged conflict between the provisions of La.Rev.Stat. 33:3062(B) and La.Rev. Stat. 22:657(C).

LAW AND ANALYSIS
Before we engage in any statutory interpretation, however, we examine first the law of the case doctrine and its applicability in the present case.

Law of the Case Doctrine
In Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (La.1972), this Court explained with Justice Tate as organ for the Court:
With regard to an appellate court, the `law of the case' refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case. This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both parties, of affording a single opportunity for the argument and decision of the matter at issue.
Nevertheless, the law-of-the-case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice. Further, the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court.
Preliminarily, we observe the principle of law of the case has no bearing upon our decision today. Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585, 589. Under this doctrine, courts of appeal generally refuse to reconsider their own rulings of law on a subsequent appeal in the same case. Id.; Garrison v. St. Charles Gen. Hosp., 03-0423, p. 1 (La.4/25/03), 845 So.2d 1047, 1047 (per curiam). However, this principle is not applied to prevent a higher court from examining the correctness of the ruling of an intermediate appellate court as it "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). The law of the case doctrine must never be applied as a restraint on the power and authority of the court in developing law *1208 and, therefore, must never be employed if such would restrain the development of law.
As this Court is not bound by the doctrine, we further find the court of appeal erred in its discretionary application of the doctrine in the present case. Based on our reading of the court of appeal's earlier disposition in the Rizzuto case in conjunction with a review of the record in Rizzuto submitted as an exhibit in the present case, the only issue resolved by the Rizzuto court was the correctness of the district court's finding plaintiff was entitled to a declaration that La.Rev.Stat. 22:657 applied to the City's health plan. No discussion of the La.Rev.Stat. 33:3062 exemption was had, and therefore, the Rizzuto court did not rule on the issue in this case, i.e., the applicability of La.Rev.Stat. 33:3062(B) to exempt the City's health plan from the penalty provision of La.Rev.Stat. 22:657(A). Under these circumstances, we find the court of appeal clearly erred in applying the law of the case doctrine.
We look now to a discussion of the merits of this case, i.e., the application of the La.Rev.Stat. 33:3062(B) exemption.

Statutory Construction
We begin by noting the application of La.Rev.Stat. 33:3062(B) as an exemption from La.Rev.Stat. 22:657(A)'s penalty provision is an issue of first impression for this Court. We do acknowledge this Court in Caraway v. Royale Airlines, Inc., 579 So.2d 424, 429 (La.1991), found the City of Bossier City was liable for penalties and attorney fees under La.Rev.Stat. 22:657(A), holding the record supported the conclusion the City of Bossier City was without just and reasonable grounds in failing to pay benefits to plaintiff under its health plan. However, we find it evident the Caraway court did not consider the exemption from the penalty provisions of La.Rev.Stat. 22:657(A) contained in La. Rev.Stat. 33:3062(B).[2] Therefore, we turn to a discussion of the provisions at issue in this case.
La.Rev.Stat. 22:657 provides, in pertinent part:
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the *1209 insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. Any court of competent jurisdiction in the parish where the insured lives or has his domicile, excepting a justice of the peace court, shall have jurisdiction to try such cases.
C. Any person, partnership, corporation or other organization, or the State of Louisiana which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer provided, however, this Section shall not apply to collectively bargained union welfare plans other than health and accident plans.
La.Rev.Stat. 33:3062 provides:
A. The governing authority of any municipality, parish, school board, or inter-local risk management agency authorized pursuant to R.S. 33:1341, et seq., hereafter referred to in this Part as the "governing authority", may contract for any type of insurance protection for itself or its officers and employees including self insurance or shared risk programs, provided the term of coverage of such insurance does not exceed ten years, and such governing authority may make such advance payments of the cost of such insurance as it shall deem appropriate.
B. A governing authority participating in a program of self-insurance or shared risk shall not constitute an insurance company or an insurer under the laws of this state, and the development and administration of such a program shall not constitute doing an insurance business. An agreement or contract entered into by any such governing authority providing for the creation and maintenance of self-insurance or shared risk programs shall not be deemed to constitute insurance as defined by R.S. 22:5, nor shall such a program be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950.
In resolving the issue of whether La.Rev.Stat. 33:3062 may be applied as an exemption in the instant situation, we must keep certain principles of judicial interpretation of statutes in mind. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. In re Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent. La. Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2 (2004); Lockett v. State, Dept. of Transp. and Development, 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. La. Civ.Code art. 9 (2004); Lockett, 03-1767 at p. 3, 869 So.2d at 90-91; Conerly v. State, 97-0871, p. 3-4 (La.7/8/98), 714 So.2d 709, 710-11. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing *1210 meaning. La. Civ.Code arts. 10 and 11 (2004); Lockett, 03-1767 at p. 4, 869 So.2d at 91; Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La.Rev.Stat. § 1:3 (2004); La. Civ.Code. arts. 12 and 13; Lockett, 03-1767 at p. 4, 869 So.2d at 91.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129; Stogner, 98-3044 at p. 5, 739 So.2d at 766. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. Boyter, 99-0761 at p. 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Id.; Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La. 1989). Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. Boyter, 99-0761 at p. 9, 756 So.2d at 1129. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. Stogner, 98-3044 at p. 5, 739 So.2d at 766.
La. Civ.Code art. 13 provides, where two statutes deal with the same subject matter, they should be harmonized if possible. Kennedy v. Kennedy, 96-0732, 96-0741, p. 2 (La.11/25/96), 699 So.2d 351, 358 (on rehearing). However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Kennedy, 96-0732, 96-0741 at p. 2, 699 So.2d at 358. Under general rules of statutory construction, the latest expression of the legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause. La. Civ.Code art. 8 (2004); State v. Board of Com'rs of Caddo Levee Dist., 188 La. 1, 175 So. 678, 681 (La.1937); Norman J. Singer, Sutherland Statutes and Statutory Construction § 23:9 (6th ed.2002).
Reading the statutes at issue in the present case in pari materia, we find the provisions of La.Rev.Stat. 33:3062(B) exempt the City in regard to its self-funded health plan from the penalty provisions of La.Rev.Stat. 22:657(A). In 1986, the Legislature enacted the provisions of La. Rev.Stat. 33:3062 by clear and express language to provide that governing authorities participating in programs of self-insurance "shall not constitute an insurance company or an insurer under the laws of this state," nor shall such programs "be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950." See Acts 1986, No. 973, § 1.[3] Chapter 1 of Title 22 of the Revised Statutes codifies the Louisiana Insurance Code and presently consists of La. Rev. Stats. 22:1 through 1520. The penalty provisions *1211 of La.Rev.Stat. 22:657are obviously contained and included in this first chapter of Title 22. Moreover, La.Rev.Stat. 33:3062(A) clearly defines the term "governing authority" as used in its provisions as the "governing authority of any municipality, parish, school board, or interlocal risk management agency authorized pursuant to R.S. 33:1341."
Since January 1, 1978, the City has been self-insured as to health care coverage for its employees, and as a self-insured governing authority of a municipality, i.e., the City of New Orleans, the City's program of self-insurance "shall not constitute an insurance company or an insurer under the laws of this state," "nor shall such a program be subject to the provisions of Chapter 1 of Title 22 of the Louisiana Revised Statutes of 1950", including La. Rev.Stat. 22:657. Thus, we find the unambiguous language of La.Rev.Stat. 33:3062(B) specifically provides the City's program of self-insurance shall not be subject to the penalty provisions of La.Rev. Stat. 22:657(A).
On the other hand, the district court and the plaintiffs assert the language of La. Rev.Stat. 22:657(C) contradicts this conclusion. The Legislature in 1979 enacted La. Rev.Stat. 22:657(C) to provide that "[a]ny person, partnership, corporation or other organization, or the State of Louisiana ... shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney's fees." See Acts 1979, No. 240, § 1. We note first off that La.Rev.Stat. 22:657(C) has not been amended or repealed since its date of enactment in 1979, therefore making La.Rev. Stat. 33:3062 the latest expression of the legislative will, which is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause. See La. Civ.Code art. 8; State v. Board of Com'rs of Caddo Levee Dist., 175 So. at 681; Singer, supra. Nevertheless, we do not find a conflict between the prior enacted provisions of La.Rev.Stat. 22:657(C) and La.Rev.Stat. 33:3062(B), as we do not find La.Rev.Stat. 22:657(C), and accordingly the penalty provisions of La.Rev.Stat. 22:657(A), are applicable to the City's program of self-insurance.
It is a fundamental principle in the construction of statutes that the meaning of a word or phrase may be ascertained by the meaning of other words or phrases with which it is associated. B.W.S. Corp. v. Evangeline Parish Police Jury, 293 So.2d 233, 236 (La.App. 3d Cir. 1974); Board of Trustees of East Baton Rouge Mortg. Finance Authority v. All Taxpayers, 336 So.2d 306, 312 (La.App. 1 Cir.1976). Under the ejusdem generis rule of statutory construction, general words, such as "other, etc.", following an enumeration of particular or specific classes or things are to take color from the specific, so that the general words are restricted to a sense analogous to the less general. Hall v. Rosteet, 247 La. 45, 169 So.2d 903, 907-08 (1964). Thus, the general words are not to be construed in their widest extent, but are to be held as applying only to such classes of things of the same general kind as those specifically mentioned. Continental Group, Inc. v. Allison, 404 So.2d 428, 431, n. 4 (La.1981).
Moreover, the law shall be applied as written, and therefore, a court must give effect to the literal application of the language of a statute, including its grammatical construction, except in the rare case where such application will produce absurd or unreasonable results. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026,-1031, 103 L.Ed.2d 290 (1989); La. Civ. Code art. 9. In such manner, punctuation as well as grammatical construction in general, although never relied upon to defeat *1212 the obvious intent, may operate as an aid in the construction and interpretation of the statute. Joy v. City of St. Louis, 138 U.S. 1, 32, 11 S.Ct. 243, 251, 34 L.Ed. 843 (1891).
In light of these general rules of construction and the specific wording found in La.Rev.Stat. 22:657(C)"[a]ny person, partnership, corporation or other organization, or the State of Louisiana"we can come to no other conclusion, but that a political subdivision of the State, such as the City, was not contemplated by the Legislature to be covered by the adoption of the term "other organization." In accordance with the rule of ejusdem generis, the general phrase "other organization" should not be construed in its widest extent, but should be applied only to such classes of things of the same general kind as those specifically enumerated with which it is associated.[4] Given a literal application of the conjunctions and punctuation utilized by the Legislature in this provision, it is evident the enumerated terms with which the term "other organization" is associated are those terms preceding the first conjunction "or" in the statute"Any person, partnership, corporation or other organization." Moreover, the use of a comma and the second conjunction "or" clearly separates the first set of classes enumerated, "[a]ny person, partnership, corporation or other organization," from the second enumerated class, "the State of Louisiana."
In this sense, the first two commas are clearly employed to separate the items listed in the first grammatical structural unit, "[a]ny person, partnership, corporation or other organization," whereas the third comma separates the second grammatical structural unit, the State of Louisiana, from the first grammatical structural unit. Likewise, the first "or" serves to conjoin the phrase "other organization" with the other enumerated terms within the first unit, whereas the second "or" serves to conjoin the first unit and the second unit. Clearly, the statute contains two conjoined structural units, and the rules of statutory construction dictate that the "catchall" phrase, "other organization," belonging to the first structural unit, must not be interpreted in conjunction with the enumerated term contained in the second structural unit, "the State of Louisiana."
This construction is further supported by the legislative history of La.Rev.Stat. 22:657(C). The original bill, House Bill No. 18 of the 1979 Regular Session, proposed the following language for Subsection C: "Any person, partnership, corporation or other organization which provides or contracts to provide health and accident benefit coverage as a self-insurer for his or its employees, stockholders, or any other persons, shall be subject to the provisions of this Section, including the provisions relating to penalties and attorney fees, without regard to whether the person or organization is a commercial insurer." See Original House Bill No. 18, Regular Session, 1979. The phrase"or the State of Louisiana"was later added to the original language of the bill and offset by a third comma at the recommendation of the House Committee on Commerce. See Minutes of Meeting of House Committee on Commerce, April 25, 1979, p. 2.
Given this legislative history and the subsequent amendment of the original bill to include the State of Louisiana, it is logical to conclude the Legislature did not intend the term "other organization" to be interpreted in association with the later added term, "the State of Louisiana." Therefore, we find the Rizzuto court erred in construing the term "other organization" in this penalty provision in association *1213 with "the State of Louisiana," to find a political subdivision an organization contemplated by the Legislature to be subjected to the penalty provisions of La.Rev. Stat. 22:657(A).
Finally, in light of this construction of the provisions at issue, La.Rev.Stat. 33:3062(B) as the specific statute governing the self-insurance of municipalities, such as the City of New Orleans, prevails over the general provisions of the Insurance Code, namely La.Rev.Stat. 22:657.

CONCLUSION
In conclusion, we find La.Rev.Stat. 33:3062(B) exempts the City with regard to its self-funded health care plan from the penalty provisions of La.Rev.Stat. 22:657(A). We overrule the Caraway decision to the extent it is inconsistent with the holding herein. Additionally, we find this Court is not bound by the doctrine of the law of the case in this matter and further, the court of appeal erred in its application of the doctrine.

DECREE
For the foregoing reasons, we reverse the judgment of the court of appeal and render declaratory judgment in favor of defendant, the City of New Orleans.
REVERSED.
NOTES
[1] Kathleen Pumphrey v. City of New Orleans, No. 93-158, CDC for the Parish of Orleans, Div. "G", 04-CA-889; Darlene Rizzuto v. City of New Orleans, No. 93-159, CDC for the Parish of Orleans, Div. "C", 04-CA-890; Fred Farve, Jr. v. City of New Orleans, No. 93-160, CDC for the Parish of Orleans, Div. "A", 04-CA-891; Michael Ricks and Vivian Ricks v. City of New Orleans, No. 93-161, CDC for the Parish of Orleans, Div. "H", 04-CA-892; Barbara Ellis v. City of New Orleans, No. 93-162, CDC for the Parish of Orleans, Div. "D", 04-CA-893; Herbert Craig v. City of New Orleans, No. 93-163, CDC for the Parish of Orleans, Div. "A", 04-CA-894; A Ray Piattoly v. City of New Orleans, No. 93-164, CDC for the Parish of Orleans, Div. "C", 04-CA-895; Patrick Murphy v. City of New Orleans, No. 93-165, CDC for the Parish of Orleans, Div. "J", 04-CA-896; and Ignatius James v. City of New Orleans, No. 93-2970, CDC for the Parish of Orleans, Div. "G", 04-CA-897. All suits were filed on January 5, 1993, except James v. City of New Orleans, which was filed on February 19, 1993. All petitions are identical except for the names of the plaintiffs.

The divisions cited herein reflect the division letters stamped on the original petitions as filed. Notably, in the Order to Consolidate, the divisions do not correspond with the division letter stamp, but are listed as follows: Pumphrey, Div. "G"; Rizzuto, Div. "I"; Farve, Div. "M"; Ricks, Div. "H"; Ellis, Div. "N"; Craig, Div. "M"; Piattoly, Div. "I"; Murphy, Div. "J"; James, Div. "G".
[2] Interestingly, the Caraway plaintiffs filed suit on February 20, 1987, for recovery of health insurance benefits due to plaintiffs under the City of Bossier City's health and hospitalization insurance, which covered plaintiff at the time of her surgery on July 30, 1986. During the course of the surgery, potentially life-threatening complications arose. Medical expenses from the surgery and treatment of the complications totaled $78,165.65. The City of Bossier City plan paid $1166 in benefits, the amount it alleged it was responsible for as secondary plan under its non-duplication of benefits provision. On July 14, 1986, the City of Bossier City plan had agreed to extend coverage as a secondary plan. Ironically, La.Rev.Stat. 33:3062 became effective on July 14, 1986.

Notably, the Caraway court did not find the City of Bossier City liable under La.Rev.Stat. 22:657(C), but rather found liability under the general penalty provision of La.Rev.Stat. 22:657(A). Specifically, even though effective, the Caraway court did not address La. Rev.Stat. 33:3062 or its exemption.
[3] This section, enacted as La.Rev.Stat. 33:3054 by Acts 1986, No. 973, § 1, was redesignated as La.Rev.Stat. 33:3062, pursuant to the statutory revision authority of the Louisiana State Law Institute. See Historical and Statutory Notes, La.Rev.Stat. Ann. 33:3062 (West 2002).
[4] For example, "other organization" would refer to that which is within the same class as person, partnership, or corporation, such as a limited liability company.