NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-299

ROOSEVELT SAMPSON

VERSUS

FRED J. RABALAIS, ET AL.

************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2007-0781
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN**
**JUDGE**

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Russell L. Potter
Andrew P. Texada
Stafford, Stewart, & Potter
Post Office Box 1711
Alexandria, Louisiana 71309
(318) 487-4910
Counsel for Defendants/Appellants:
    Lafayette Insurance Company
    Fred J. Rabalais

**Cory P. Roy**
**Beau R. Layfield**
**Law Offices of Cory P. Roy**
**Post Office Box 544**
**Marksville, Louisiana  71351**
**(318) 240-7800**
**Counsel for Plaintiff/Appellee:**
      **Roosevelt Sampson**

**SULLIVAN, Judge.**

Homeowner and his insurer appeal the trial court's denial of their motion for summary judgment, liability determination, and assessment of fault regarding injuries suffered by plaintiff when he was injured while cutting a broken limb from the homeowner's tree. We affirm.

### *Facts and Procedure History*

On August 12, 2006, Roosevelt Sampson was injured while cutting a broken limb from a tree for Fred J. Rabalais at his home in Mansura. Approximately three or four weeks earlier, the limb had broken about twenty feet up in the tree and was resting on a lower limb about eleven feet up in the tree. Due to a heart condition, Mr. Rabalais could not perform the manual labor required to remove the broken limb. He had his son cut a portion of the limb close to the ground but did not want his son climbing a ladder or using a chain saw to cut the remainder of the limb because he felt it was dangerous.

Mr. Rabalais went to the town hall and asked around for someone who would cut some limbs for him; he was given Mr. Sampson's name. Mr. Sampson, whom Mr. Rabalais had known for many years, worked for the Town of Mansura cutting grass, raking, and picking up branches; he never did tree trimming. Mr. Rabalais located Mr. Sampson working on the side of the road and asked him to perform the task. Mr. Sampson went to Mr. Rabalais's home, looked at the limb in the tree, and told Mr. Rabalais that he could do the job but needed Mr. Rabalais to get a ladder. Mr. Rabalais borrowed an extension ladder from one of his neighbors, and Mr. Sampson borrowed a chain saw.

1

Mr. Sampson reported to Mr. Rabalais's home August 12 to cut the limb. Mr. Rabalais testified that Mr. Sampson acted like he knew what he was doing; however, he also testified that he made Mr. Sampson reposition the ladder on the tree because he felt that the ladder was not secure. Mr. Rabalais further testified that after Mr. Sampson repositioned the ladder, he felt the bottom of the ladder was not secure and that he told Mr. Sampson to wait for him to get a block of wood to secure it, but Mr. Sampson did not listen to him and started the chain saw, climbed the ladder, and proceeded to cut the limb while he was in his garage getting the block of wood.

According to Mr. Sampson, when Mr. Rabalais told him the ladder was not level, he got off the ladder, moved only the bottom of the ladder, tried to get the top and bottom of the ladder level, then began to climb the ladder. He testified that Mr. Rabalais did not stop him again but let him continue climbing the ladder. He further testified that Mr. Rabalais did not tell him the ladder needed to be blocked before he climbed it or to wait before cutting the limb and that Mr. Rabalais did not leave to go to his garage to get a block of wood.

Mr. Sampson did not cut completely through the limb on his initial cut. He testified that when he completed the cut, the release of the weight of the broken limb from the lower limb on which it was resting allowed the lower limb to return to its normal position. According to Mr. Sampson, this caused the ladder to move and fall to the ground, and he had no choice but to fall with the ladder. However, Mr. Rabalais and his neighbor who loaned him the ladder testified that only Mr. Sampson fell to the ground; the ladder remained resting on the tree limb. Mr. Sampson further testified that there was nothing wrong with the ladder until he

2

cut the broken limb, that he thought the ladder was okay where he originally positioned it, and that he moved it because Mr. Rabalais told him to move it.

When Mr. Sampson fell, the chain saw cut a gash in one of his hands, and he injured his left side and lower back. After his fall, he also had headaches, neck pain, and elbow pain.

Mr. Sampson sued Mr. Rabalais and his insurer, Lafayette Insurance Company, to recover damages he suffered as a result of his injuries. After depositions were taken by the parties, Defendants filed a motion for summary judgment, urging that Mr. Sampson failed to allege facts in his petition which entitled him to recover damages. In his petition, Mr. Sampson asserted that the ladder provided by Mr. Rabalais for him to use when cutting the tree was defective and/or in poor condition which caused and/or contributed to his accident. He claimed that Mr. Rabalais was negligent and identified his negligent acts as: 1) providing a defective ladder; 2) failing to warn him of the poor condition of the ladder; 3) failing to provide adequate equipment to him to enable him to cut the limb; and 4) "[o]ther acts of negligence that will be shown at the trial of this matter."

After oral arguments by the parties, the trial court denied the motion for summary judgment. Defendants filed a writ application with this court, seeking to have the trial court's denial of the motion for summary judgment reversed. A panel of this court denied the writ application, finding "no error in the trial court's ruling." *See* our unpublished opinion in *Sampson v. Rabalais*, bearing docket number 08-484 (La.App. 3 Cir. 4/30/08). Thereafter, Mr. Sampson amended his petition to assert that Mr. Rabalais ordered him to place the ladder on a "shifting branch" and failed to warn him of the "springing effect that would occur once the branch was cut."

3

On January 12, 2009, a trial on the merits was held. At the conclusion of the trial, the trial court issued oral reasons, assessing Mr. Rabalais with 60% fault and Mr. Sampson with 40% for causing the August 12, 2006 accident. The trial court determined that Mr. Sampson was entitled to $30,000.00 for pain and suffering, medical expenses in the amount of $17,644.44, and lost wages in the amount of $1,120.00 and awarded judgment against Defendants in the amount of $18,000.00 for pain and suffering, $9,986.66 for medical expenses, and $672.00 for lost wages. Defendants appealed the judgment and now assign three errors.

## *Assignment of Errors*

Defendants assert that the trial court committed three errors: 1) the trial court erred in denying their motion for summary judgment; 2) the trial court erred in holding that Mr. Rabalais was negligent in hiring Mr. Sampson or at fault in any manner; and 3) even if Mr. Rabalais was at fault, the trial court erred in finding that he was more at fault than Mr. Sampson.

## *Discussion*

### *Motion for Summary Judgment*

Defendants urge that the trial court erred in denying their motion for summary judgment, asserting that Mr. Sampson's petition does not set forth facts which support a finding that Mr. Rabalais is liable to him. Mr. Sampson urges that the law of the case doctrine, which recognizes the binding force of trial court rulings during later stages of the trial, is applicable and that this assignment of error should not be considered.

This doctrine serves four purposes: avoidance of litigating the same issue again, promote consistency of result within a case, promote essential fairness to the

4

parties, and judicial efficiency. *Trahan v. State ex rel. Dep't of Health and Hosps.*, 04-743 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245. Application of the doctrine is discretionary. It should not be applied if the earlier appellate decision is wrong or if application of it would result in injustice. *Pumphrey v. City of New Orleans*, 05-979 (La. 4/4/06), 925 So.2d 1202.

Defendants' arguments on this assignment have previously been considered by this court. Their arguments have not changed on appeal. Finding no error in it, we will not reconsider our prior determination.

***Mr. Rabalais's Liability***

Defendants argue that the trial court erred in finding Mr. Rabalais negligent. The trial court's assessment of liability to Mr. Rabalais rests on a number of factors outlined in its reasons, including: 1) Mr. Sampson's inability to perceive and recognize potential dangers; 2) Mr. Rabalais's recognition of the danger of the task at hand; 3) Mr. Sampson's desire to help others; and 4) Mr. Sampson's credibility.

In its reasons for ruling, the trial court described Mr. Sampson as "the village idiot" and determined that he was unable "to perceive and recognize potential dangers." It concluded that Mr. Rabalais "was in a much better position at his home to recognize the potential for danger not just at the footing of a ladder but more significantly where the ladder rest[ed] on the limb. He did not do so." Additionally, the trial court characterized Mr. Sampson as a "yes man." Mr. Sampson's description of his readiness to assist others with tasks they wanted performed "out of the kindness of his heart," regardless of whether they paid him or not, supports this characterization.

5

Defendants take issue with these points and others contained in the trial court's oral reasons for ruling in favor of Mr. Sampson. They urge that there is no evidence that Mr. Rabalais knew or should have known that Mr. Sampson was not competent to cut the broken tree limb safely. Mr. Sampson counters that Mr. Rabalais should have known these things because Mr. Rabalais had known him for many years, as he had worked for Mr. Rabalais's father years before the accident.

The evidence establishes that Mr. Sampson was sixty-three years old when the accident happened. He had a third grade education and could write a little but could not read. He had worked many years as a farm laborer and as a general laborer for Mansura for a few years before the accident. The evidence also establishes that Mr. Rabalais had known Mr. Sampson all his life, but it does not clearly establish that Mr. Rabalais knew or should have known that Mr. Sampson only had a third grade education or that he was not capable of fully comprehending the danger presented by the task at hand. However, the trial court's description of Mr. Sampson as "the village idiot" addresses this issue. The description was not meant to be derogatory but to emphasize that it was evident Mr. Sampson was simpleminded and did not have the ability to perceive and comprehend the danger of cutting the broken tree limb, the importance of where he placed the ladder, and the danger inherent in placing the ladder on the limb upon which the broken limb rested. Implicit in the trial court's reasons is that this characterization was not based solely on Mr. Sampson's third grade education but upon his presence and/or demeanor. Also implicit in the trial court's reasons is that this inability is evident to anyone who meets him.

"[G]reat deference is accorded to the trial court's factual findings, *both express and implicit*, and reasonable evaluations of credibility and reasonable inferences of

6

fact should not be disturbed on appellate review of the trial court's judgment."
*Shephard v. Scheeler*, 96-1690, p.14 (La. 10/21/97), 701 So.2d 1308, 1316 (emphasis added). Accordingly, a finding of fact by a trial court may not be set aside in the absence of manifest error or unless it is clearly wrong. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201 (La. 10/19/99), 748 So.2d 417.

Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Id.* Where documents or objective evidence so contradicts the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, if such factors are not present, and a fact finder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

There are numerous inconsistencies between Mr. Sampson's testimony and Mr. Rabalais's testimony and between Mr. Rabalais's deposition testimony and his trial testimony. The trial court emphatically found Mr. Sampson to be more credible than Mr. Rabalais and accepted his testimony over Mr. Rabalais's. Nothing in the record, except Mr. Rabalais's testimony, contradicts Mr. Sampson's version of what occurred when he cut the broken limb. Therefore, we cannot disturb the trial court's findings which are based on this credibility determination.

7

As discussed above, the trial court also determined that based on Mr. Sampson's presence and/or demeanor and Mr. Rabalais's having known him all his life, Mr. Rabalais knew or should have known that Mr. Sampson would not perceive and comprehend the dangers inherent in climbing the ladder and cutting the broken limb. The record does not reveal, and cannot reveal, Mr. Sampson's presence and demeanor; accordingly, there is also no basis in the record for this court to disturb the findings of fact.

For these reasons, the trial court's determination that Mr. Rabalais was negligent in connection with Mr. Sampson's cutting of the broken limb is affirmed.

*Assessment of Liability*

An assessment of percentages of fault is a fact-driven determination. Accordingly, appellate courts must give some deference to a trial court's allocation of fault and can only disturb a fault allocation if it is manifestly erroneous or clearly wrong. *Duncan v. Kansas City S. Ry. Co.*, 00-66 (La. 10/30/00), 773 So.2d 670. If we make such a finding, we can disturb the trial court's apportionment of fault "only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion." *Clement v. Frey*, 95-1119, pp. 7-8 (La. 1/16/96), 666 So.2d 607, 611.

Having considered the record, especially the trial court's findings of credibility, Mr. Sampson's inability to comprehend the danger presented, and Mr. Rabalais's superior position in the situation, we cannot say that the trial court's allocation of fault is clearly wrong or manifestly erroneous.

## *Disposition*

The judgment of the trial court is affirmed. All costs are assessed to Mr. Rabalais and Lafayette Insurance Company.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.