# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-331


YEVONNE SAWYERS, ET AL.

VERSUS

NAOMI HEIGHTS NURSING HOME & REHABILITATION CENTER,
L.L.C., ET AL.


**\*\*\*\*\*\*\*\*\*\***


ON APPLICTION FOR SUPERVISORY WRIT FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 255,006 F
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.


**WRIT DENIED.**

**Brent P. Frederick**
**Michael T. Beckers**
**Danielle N. Goren**
**Frederick & Beckers, LLC**
**112 Founders Drive, Suite 101**
**Baton Rouge, Louisiana  70810**
**(225) 372-6000**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
    **Yevonne Sawyers, Individually and on behalf of Cecilia Sullivan**
    **Patricia Hall, Individually and on behalf of Cecilia Sullivan**

**Walter F. Clawson**
**400 Travis Street, Suite 908**
**Shreveport, Louisiana  71101**
**(318) 424-1600**
**COUNSEL FOR RELATOR:**
    **Louisiana Patient's Compensation Fund**
    **Louisiana Patient's Compensation Fund Oversight Board**

**CONERY, Judge.**

Relators, the Louisiana Patients' Compensation Fund and the Louisiana Patient's Compensation Oversight Board, seek a supervisory writ from the judgment of the Ninth Judicial District Court, Parish of Rapides, the Honorable George Clarence Metoyer, Jr., presiding, which denied Relators' motion in limine. We deny the writ, finding no abuse of discretion.

## FACTS AND PROCEDURAL HISTORY

This case involves a medical malpractice wrongful death and survival action filed by Plaintiffs, Yevonne Sawyers and Patricia Hall, individually and on behalf of their deceased mother, Cecilia Sullivan. Plaintiffs alleged that Ms. Sullivan received substandard medical care from Naomi Heights Nursing and Development Center, L.L.C. (Naomi Heights), and Guardian Hospice Care, L.L.C. (Guardian Hospice), ultimately resulting in the development of a chronic decubitus ulcer, Stage IV, and sepsis, resulting in her prolonged suffering and ultimately death. Following periods of admissions to the hospital for treatment of her conditions, Ms. Sullivan was transferred to another facility for palliative care on November 6, 2013, and she died on November 16, 2013.

Prior to her transfer from Naomi Heights, and prompted by Plaintiffs, the Louisiana Department of Health and Hospitals (DHH) conducted an unannounced investigation of the nursing home on July 26, 2013. That investigation resulted in Naomi Heights being cited for various deficient practices in violation of federal and state regulations for nursing homes. DHH also conducted an unannounced investigation of Guardian Hospice on August 21, 2013. It cited Guardian Hospice for the failure to coordinate with the nursing home for the proper care of a patient who had developed a pressure sore, in violation of state and federal regulations.

Plaintiffs contend that both Naomi Heights and Guardian Hospice have admitted the deficiencies contained in the DHH reports.

Relators filed the motion in limine under review seeking to have Plaintiffs prohibited from introducing into the record or making any reference to any records which DHH has on Ms. Sullivan or any DHH complaint surveys conducted during the time when Ms. Sullivan was a resident of Naomi Heights and Guardian Hospice, "including but not limited to the period of April 10, 2013, to November 6, 2013." Following a hearing, the trial court denied Relators' motion in limine, thus allowing admission of the records at trial

As "[a]n interlocutory judgment is appealable only when expressly provided by law[,]" Relators now seek review of that ruling by this application for supervisory writ. La.Code Civ.P. art. 2083(C). *See* La.Code Civ.P. art. 1841. *See also Lalla v. Calamar, N.V.*, 08-0952 (La.App. 4 Cir. 2/11/09), 5 So.3d 927.

## ASSIGNMENT OF ERROR

1. The Trial Court erred in denying [Relators'] Motion in Limine seeking to exclude various DHH Surveys/Reports.

## LAW AND DISCUSSION

Relators contend that the documents at issue include a Statement of Deficiencies and Plan of Correction generated by DHH in compliant surveys conducted on July 20, 2013, and August 14, 20, and 21, 2013, and that those documents are comprised of factual findings resulting from the investigation of particular incidents occurring at Naomi Heights on April 10 and 16, 2013. Relators assert that such documents are inadmissible under the statutory and jurisprudential rules governing hearsay evidence.

2

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Pursuant to the hearsay rule set forth in La.Code Evid. art. 802, "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." Louisiana Code of Evidence Article 803(8)(a), in pertinent part, provides that the following evidence is not excluded by the hearsay rule:

> **(8) Public records and reports.** (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
>
> (i) Its regularly conducted and regularly recorded activities;
>
> (ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or
>
> (iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.

However, La.Code Evid. art. 803(8)(b)(iv) provides, in pertinent part, as follows:

> (b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:
>
> . . . .
>
> (iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences.

Relators note that in interpreting La.Code Evid. arts. 803(8)(a) and 803(8)(b)(iv), the Louisiana Supreme Court has stated:

> La.Code Evid. art. 803(8)(a)(iii) provides that records of a public agency setting forth "[f]actual findings resulting from an investigation made pursuant to authority granted by law" are exceptions to the hearsay rule and are admissible at trial. However, La.Code Evid. art.

3

803(8)(b)(iv) excludes from this exception to the hearsay rule "[f]actual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based...." Thus, while factual findings of general investigations are admissible, those of particular incidents are not admissible as public records.

*Green v. Connor*, 94-2120, pp. 1-2 (La. 10/7/94), 644 So.2d 618, 618.

Relators contend that the DHH records and surveys, which are the subject of their motion in limine, are factual findings arising out of particular complaints and investigations conducted by DHH on August 14, 20, and 21, 2013, with regard to particular incidents that occurred at Naomi Heights on April 10 and 16, 2013. As such, Relators assert that the reports and surveys at issue are expressly made inadmissible by La.Code Evid. art. 803(8)(b)(iv).

In support of that assertion, Relators cite various cases, including *McRay v. Booker T. Washington Nursing Home*, 30,399 (La.App. 2 Cir. 4/8/98), 711 So.2d 772. Relators also rely on a writ ruling in an unrelated case filed in this court. *See In Re: Medical Review Panel of Gertrude Theresa Juneau*, 18-0958 (La.App. 3 Cir. 12/10/18) (an unpublished writ ruling). In *Juneau*, this court reversed a trial court's denial of a motion in limine and granted that motion based on its finding that the DHH's records and reports pertaining to the medical malpractice at issue in that case should be excluded pursuant to La.Code Evid. art. 803(8)(B)(iv).

In response, Plaintiffs point out that, distinct from *McRay* and *Juneau*, they have raised the argument that the DHH records and surveys are explicitly admissible pursuant to La.R.S. 13:3715.3, which, in pertinent part, provides:

> [G](4) Disclosure is deemed to be authorized in any of the following circumstances:
>
> . . . .

4

(e) In response to duly authorized discovery as contemplated by the Louisiana Code of Civil Procedure, surveys, statements of deficiencies, and records pertaining to the results of investigations of surveys conducted by or on behalf of any governmental regulatory agency may be discoverable and admissible in a civil action against a healthcare provider if the surveys and related documents are directly related to the type of injury allegedly sustained by the patient at issue in the civil action and the deficiencies have either been admitted by the healthcare provider or have been declared valid through the appellate process established by the administrative agency in charge of reviewing surveys. When a party seeks to admit into evidence surveys, statements of deficiencies, and related documents, any party to a civil action may request and the court, using its discretion, may conduct a voir dire of the witness supporting the surveys and related documents to determine whether the deficiency is based on reliable evidence.

Plaintiffs note that La.R.S. 13:3715.3(G)(4)(e) was enacted after *McRay* and that it was not addressed in *Juneau*. They further argue that the statute was specifically enacted to establish that in cases like this one, surveys, statements of deficiencies, and records pertaining to investigations or surveys conducted by a governmental regulatory agency such as DHH shall be admissible in civil actions against healthcare providers. Relators argue, however, that Plaintiffs' reliance on La.R.S. 13:3715.3(G)(4)(e) is misplaced because that statute applies to peer review proceedings, rather than to medical malpractice claims.

Plaintiffs assert that while the factual findings resulting from an investigation of a particular complaint or incident would normally fall under the exclusions to the business records exception to the hearsay rule set forth in La.Code Evid. art. 803(8)(B)(iv), the enactment of La.R.S. 13:3715.3(G)(4)(e) in 2001 created a statutory exception to the hearsay rule for the admissibility of DHH's records, surveys, and statements of deficiencies, if those documents result from an investigation related to the type of injury sustained by a patient in a civil action and if the deficiencies contained in the documents have been admitted by the healthcare provider. Plaintiffs maintain that both conditions for application of La.R.S.

5

13:3715.3(G)(4)(e) are satisfied in the instant case, thus making the documents at issue admissible.

Also, Plaintiffs point out that the jurisprudence has held that "[r]ules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *LeBreton v. Rabito*, 97-2221, p. 7 (La. 7/8/98), 714 So.2d 1226, 1229 (citations omitted). Plaintiffs also note that the jurisprudence has held that "[u]nder general rules of statutory construction, the latest expression of the legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause." *Pumphrey v. City of New Orleans*, 05-0979, p. 12 (La. 4/4/06), 925 So.2d 1202, 1210 (citations omitted). Given that principle, Plaintiffs argue that because La.R.S. 13:3715.3(G)(4)(e) is a more specific statute than La.Code Evid. art. 803(8)(B)(iv) and because La.R.S. 13:3715.3(G)(4)(e) was enacted more recently than La.Code Evid. art. 803(8)(B)(iv), that former provision should apply. Plaintiffs also contend that the cases cited by Relators are not applicable because they did not involve consideration of La.R.S. 13:3715.3(G)(4)(e).

Plaintiffs additionally assert that the admissibility of the DHH's documents at issue is warranted because the documents have already been authenticated by DHH. As such, Plaintiffs contend that no testimony is needed for admission of the documents. Nevertheless, Plaintiffs maintain that it is premature to hold the documents inadmissible at this time because at trial, Plaintiffs could call a DHH employee to provide testimony curing any admissibility issues by authenticating the subject surveys and reports. Plaintiffs further note that both Naomi Heights and

6

Guardian Hospice have admitted to the deficiencies contained in the DHH's surveys. Finally, Plaintiffs further suggest that, because Naomi Heights has filed DHH's report in its own business records at the nursing home, it has waived its right to object to the admissibility of the documents. We agree.

We find that Plaintiffs correctly identify language in La.R.S. 13:3715.3(G)(4)(e) favoring a determination that the DHH reports and surveys at issue are admissible as the statute allows for the admission of records and surveys prepared be a government regulatory agency such as DHH under certain preconditions. The exclusion of evidence under one rule, such as La.Code Evid. art. 803(8)(b)(iv), does not mean that that evidence cannot be expressly designated admissible under another statutory provision, such as La.R.S. 13:3715.3(G)(4)(e). To the extent that the provisions may arguably be in conflict, such conflict must be decided in favor of the application of the more specific and the more recently enacted law. *See LeBreton*, 714 So.2d 1226. *See also Pumphrey*, 925 So.2d 1202. Finally, as noted by the trial court, Relators' attempt to have the reports and surveys deemed inadmissible is premature at this point.[1]

## CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion when it denied Relators' motion in limine. Therefore, this writ application is denied.

**WRIT DENIED.**

---

[1] On this point, the trial court determined that: "It is premature … to assume in what way the reports will be presented to the jury, and for what matters they will be introduced for, if at all. The hypothetical scenarios are endless at this point, and to deny the admissibility outright would be prejudicial to the Plaintiff."