SUSAN M. CHEHARDY, Judge.
 

 12This is an insurance lawsuit arising out of Hurricane Katrina damage. The plaintiff appeals a summary judgment in favor of several of the defendants. We affirm.
 

 PROCEEDINGS IN TRIAL COURT
 

 JSB Interests, Inc. (“JSB”) filed suit in August 2006 against Eagan Insurance Agency, Inc. (“EIA”), Marcus Eagan, the Hanover Insurance Company (“Hanover”), and Westport Insurance Company (“West-port”) as errors and omissions insurer of EIA and Marcus Eagan.
 

 The petition makes the following allegations: Prior to August 29, 2005, JSB obtained an insurance policy from Hanover, through EIA and Marcus Eagan, to cover personal and immovable property in its building at 2 Commerce Court in Harahan, Louisiana. JSB requested “full insurance coverage,” and EIA and Marcus Eagan represented to JSB that the policy provid
 
 *213
 
 ed full coverage for any loss or damage to the property, with no gaps in coverage or exclusions for JSB’s property. In addition, the policy incorporated “Additional Property Coverage and Extensions — Bu-sinessowners Declarations,” which JSB believed evidenced that the policy provided full coverage for any loss or damage to personal property owned by JSB, up to the policy limit of $500,000.
 

 |sThe petition alleges further that JSB sustained significant damage to its personal property and immovable property due to Hurricane Katrina.
 
 [1]
 
 After the hurrieane, Marcus Eagan reviewed the policy with representatives of JSB and reaffirmed that the policy provided coverage for personal property. He specifically stated that such coverage was included under the declaration mentioned above. Hanover’s communications with JSB after Hurricane Katrina also indicated that the policy provided coverage for personal property. When JSB submitted its claim to Hanover, however, Hanover advised it was denying coverage for any damage to JSB’s personal property because the policy covers only the building at # 2 Commerce Court, not personal property of JSB located in or on those premises.
 

 As against Hanover, JSB alleged breach of duty to fully inform JSB of coverage options, negligent misrepresentation regarding the scope and nature of the policy, breach of implied warranty regarding coverage under the policy, failure to fairly and promptly adjust the claim and timely pay the insurance benefits due under the policy; breach of its duty of good faith and fair dealing, failure to initiate loss adjustment within 30 days after notification of loss, and breach of its statutory obligations under La. R.S. 22:658 and 22:1220.
 

 Alternatively, in the event the court determines that JSB’s personal property was not covered by Hanover’s policy, JSB asserted that EIA, Marcus Eagan, and their errors and omissions insurer are liable to JSB for breach of their duties to fully and fairly inform JSB of its coverage options; negligent misrepresentation regarding the scope and nature of the Hanover policy; and breach of their express and implied warranties regarding the coverage of Hanover’s policy.
 

 |4In the further alternative, JSB asserted that EIA and Marcus Eagan were acting at all pertinent times as agent of Hanover in the sale of insurance policies and Hanover is therefore estopped from asserting a meaning of its policy coverage different from that communicated by EIA and Marcus Eagan to JSB.
 

 All defendants filed answers denying the allegations, referring to the Hanover insurance policy itself as the best evidence, and raising affirmative defenses.
 

 In addition, EIA, Marcus Eagan, and Westport (hereafter collectively “the Ea-gan Defendants”) filed a motion for summary judgment, asserting they are entitled to judgment because JSB did not request coverage for the building contents, the movers did not owe a duty to advise JSB to procure contents coverage, JSB could not establish it relied on any statements made by EIA and Eagan, and JSB could not establish that EIA and Eagan warranted or promised any result or failed to perform any work. The Eagan Defendants further asserted that JSB’s claims for negligent misrepresentation must fail because JSB cannot establish justifiable reliance on their agent’s alleged misrepresentations, because an insured is responsi
 
 *214
 
 ble for reading his policy and is presumed to know its terms.
 

 In support of the motion, the Eagan Defendants filed copies of written correspondence between Eagan representatives and Edward Q. Castle, regarding insurance quotes for the building at 2 Commerce Court in Harahan. Castle was Human Resources Manage for Barrister Global Services Network, Inc., which was to lease the building from JSB. Also attached was an Application for Commercial Insurance for building coverage, which did not request business personal property coverage; and an insurance policy declarations page that indicates coverage for business personal property in the amount of “$0.”
 

 |fiIn opposition to the motion for summary judgment, JSB filed the affidavit of John S. Bowers, III, sole member/manager of JSB. (JSB could not produce an affidavit from Ed Castle because Castle died prior to the litigation.)
 

 In the affidavit, Bowers averred that JSB purchased the building at 2 Commerce Court on August 30, 2004, and leased the property to Barristers Global Services Network, Inc. Bowers said that at all pertinent times, the business personal property of JSB was located in the building at 2 Commerce Court. Bowers stated that Marcus Eagan contacted him in 2004 about selling insurance products to Bowers and/or his affiliated businesses. Bowers said he and Ed Castle, who was manager of human resources and special projects for JSB, discussed the business needs of JSB with Marcus Eagan. The affidavit states Bowers and Castle informed Eagan of JSB’s need for full coverage without gaps for contents or business personal property, and expressly requested that any policy procured by Eagan include such coverage.
 

 Bowers stated further that he personally had conversations with Marcus Eagan in which Marcus Eagan represented that the policy provided full coverage for any loss to business personal property owned by JSB, and that after Hurricane Katrina Marcus Eagan told him that coverage for the business personal property at issue falls under “Additional Property Coverages and Extensions.” Bowers further averred that in September 2005, he met with Marcus Eagan to discuss the Hanover policy and to prepare for meeting with representatives of the Hanover regarding JSB’s claim for damage caused by Hurricane Katrina. At that meeting, Bowers stated, Marcus Eagan stated that the Hanover policy provided coverage for JSB’s business personal property, and Eagan highlighted various provisions of the Hanover policy evidencing such coverage.
 

 | ^Bowers also said that he did not receive a copy of the Hanover policy prior to Hurricane Katrina, and that he did not receive the letter purportedly issued on September 21, 2004, which the Eagan Defendants claimed showed when the policy was delivered to JSB, until this litigation in 2008. Bowers said that prior to receipt of an e-mail message from a Hanover employee in November 2005 stating that Hanover insured only the building, not business personal property, neither he nor any other person employed by or affiliated with JSB had knowledge of Hanover’s contention that its policy provided coverage only for the building.
 

 Bowers’ affidavit stated further that after he received the November 2005 message from the Hanover employee, he confronted Marcus Eagan regarding Hanover’s refusal to pay for damage other than to immovable property. According to Bowers, Marcus Eagan represented to Bowers and another JSB employee, Byron Cain, that the Hanover policy did
 
 *215
 
 provide coverage for JSB’s personal property and that he would support JSB’s position regarding such coverage.
 

 Bowers averred that despite Hanover’s assertion that its policy did not cover personal property, at the same time Hanover was requesting that JSB provide proof of ownership for the items claimed as hurricane losses. Bowers stated that based on representations by Marcus Eagan, among other things, until November 29, 2005 JSB had no reason to believe that the Hanover policy did not provide coverage — or that Hanover would deny coverage — for business personal property.
 

 After hearing argument of counsel, the court took the motion under advisement. The trial court subsequently granted summary judgment without giving reasons for the ruling.
 

 JSB appeals. It argues there is a genuine issue of material fact as to whether JSB instructed EIA and Eagan to procure insurance covering JSB’s business personal property. JSB submitted affidavits in opposition to the motion for |7summary judgment, but exhibits attached to the motion for summary judgment directly contradict JSB’s affidavits. Hence, JSB argues, there is a genuine issue of material fact and summary judgment is not appropriate.
 

 The Eagan defendants contend the affidavit by JSB’s principal officer does not raise a genuine issue of material fact, because it is self-serving and not based on his personal knowledge. It offers his version of what went on between the now-deceased employee in charge of obtaining coverage and the insurance agency, although the affiant was not present at such meetings/conversations and does not have direct knowledge.
 

 LAW AND ANALYSIS
 

 Summary judgment is appropriate when the pleadings, depositions, and affidavits show there is no genuine issue as to any material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
 

 In
 
 King v. Illinois Nat Ins. Co.,
 
 2008-1491, p. 6 (La.4/3/09), 9 So.3d 780, 784, our supreme court summarized summary judgment law as follows:
 

 Appellate review of the granting of a motion for summary judgment is
 
 de novo,
 
 using the identical criteria that govern the trial court’s consideration of whether summary judgment is appropriate. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to favorably accomplish these ends. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial |Ron that issue and summary judgment is appropriate. [Citations omitted.]
 

 This Court recently reiterated,
 

 Summary judgments are now favored in the law and the rules should be liberally applied.
 

 [[Image here]]
 

 
 *216
 
 The mover bears the burden of proof; however, the mover need only to “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim....” Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. [Citations omitted.]
 

 Alexander v. Parish of St. John the Baptist,
 
 09-840, pp. 6-7 (La.App. 5 Cir. 3/23/10), 33 So.3d 999, 1003-1004,
 
 writ denied,
 
 2010-1289 (La.9/17/10), 45 So.3d 1056.
 

 Our decision turns on whether the affidavit of John S. Bowers, III, raises one or more genuine issues of material fact.
 
 [2]
 
 The Eagan Defendants assert that JSB’s claims of breached express and implied warranties must fail because JSB failed to allege the existence of a warranty.
 

 An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
 

 Roger v. Dufrene,
 
 613 So.2d 947, 948 (La. 1993), quoting
 
 Karam v. St. Paul Fire & Marine Insurance Co.,
 
 281 So.2d 728, 730-731 (La.1973).
 

 19We agree with the Eagan Defendants that the Bowers affidavit does not raise genuine issues of material fact, either as to what representations were made by Marcus Eagan, or as to whether and when JSB received a copy of the insurance policy.
 

 Bowers’ affidavit conflicts with the exhibits offered by the Eagan Defendants on the salient points of what was discussed with Marcus Eagan regarding coverage of business personal property, and when JSB should be considered to have had notice that the Hanover policy did not cover business personal property. Bowers’ affidavit, however, is not based on personal knowledge. It states what purportedly transpired in communication between the deceased Ed Castle and Eagan’s representatives. Ed Castle alone made the final request for insurance coverage on behalf of JSB. Bowers was not present and has no personal knowledge regarding the request made during the meeting between Ed Castle and Marcus Eagan.
 

 In addition, Eagan’s exhibits in support of the motion for summary judgment included Ed Castle’s written request for building coverage; a signed Application for Commercial Insurance for building coverage, devoid of any request for business personal property coverage; and an insurance policy that clearly indicates coverage for business personal property in the amount of “$0.00.”
 

 Further, Eagan did not owe a duty to advise JSB to procure business personal property coverage. Eagan’s duty to pro
 
 *217
 
 cure the insurance coverage requested by JSB did not include a duty to spontaneously identify JSB’s needs and advise it regarding additional coverage.
 

 “In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.”
 
 Jones v. Gray Ins. Co.,
 
 07-650, p. 6 (La.App. 5 Cir. 2/6/08), 980 So.2d 1, 4. “It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised, for the weighing of conflicting evidence has no place in summary judgment procedure.”
 
 ACMG of Louisiana, Inc. v. Jones,
 
 35, 102, p. 7 (La. App. 2 Cir. 9/26/01), 796 So.2d 704, 708,
 
 writ denied,
 
 2001-2869 (La.1/11/02), 807 So.2d 240.
 

 DECREE
 

 For the foregoing reasons, we affirm the summary judgment. Costs of this appeal are assessed against the appellant, JSB Interests, LLC.
 

 AFFIRMED
 

 [1]
 

 . The business personal property for which JSB seeks payment includes an 18-foot-long conference table valued in excess of $100,000, as well as cabinets, desks, bookshelves, credenzas, filing cabinets, chairs, computers, printers, and related office equipment.
 

 [2]
 

 . JSB filed Bowers’ affidavit in connection with a peremptory exception of peremption made by EIA, Marcus Eagan, and Westport that the trial court referred to the merits. JSB re-used the affidavit in connection with its opposition to the motion for summary judgment. In addition, our review of the record for summary judgment purposes allows us to consider all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits” that were filed during the entire course of the litigation, as provided by La. C.C.P. art. 966.