JOHNSON, J.,
dissents with reasons.
1,1, respectfully, diságree with the majority opinion that the Louisiana Supreme Court intended for us to review the merits of this appeal for two reasons. First, the Supreme Court’s opinion simply addressed the procedural faults with this Court’s original opinion. The Supreme Court reversed and remanded the case to this Court for consideration of the issues that were not addressed because of the improper dismissals. Second, the pretermitted issues referred to in the Louisiana Supreme Court opinion were the issues regarding the granting of several Motions for Summary Judgment by the trial court. The merits of a case are not considered on a Motion for Summary Judgment. (See, JSB Interests, LLC v. Hanover Ins. Co., 10-487, p. 10 (La.App. 5 Cir. 3/9/11); 62 So.3d 211, where this Court found, “It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised, for the weighing of conflicting evidence has no place in summary judgment procedure.”) Even on de novo review and reviewing the issues as the trial court would, I opine that we are procedurally barred from determining the merits of this case and are outside of our jurisdiction.
Assuming that the merits of the case were properly before us, I dissent from the majority opinion for the following reasons.
| JEntergy’s Appeal
Entergy, through its cross-claims against Stewart, Landaverde and Woodward, alleged the OPLSA provisions were violated by its co-defendants due to lack of proper notice of the commencement of the work, and they were the “persons responsible” for Moreno’s injuries. As a result, Entergy averred it is entitled to be indemnified, pursuant to LSA-R.S. 45:144 of the *414 OPLSA, for any of the damages it incurred from the accident from Stewart, Landa-verde and Woodward.
LSA-R.S. 45:143 provides, in pertinent part,
A. When any person desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Chapter, the person or persons responsible for the work to be done shall promptly notify the owner or operator of the high voltage overhead line prior to the scheduled commencement of the work. Such notice shall be reasonable, considering the work to be done; however, the notice shall not be less than forty-eight hours prior to the scheduled commencement of the work, exclusive of holidays and weekends, except in emergency situations that include police, fire, and rescue emergencies, in which case the notice shall be made as soon as possible.
B. The work shall be performed only after satisfactory mutual arrange- ’ ments have been negotiated between the owner or operator of the high voltage overhead lines and the person or persons responsible for the work to be done. The owner or operator of the lines shall initiate the agreed upon safety arrangements within three working days and shall complete the work promptly, subject to emergency weather conditions. Arrangements may include placement of temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage overhead lines; temporary deenergization and grounding; temporary location or raising of the lines; or by other means deemed appropriate by the owner or operator of the lines.
LSA-R.S. 45:144 further provides, in pertinent part,
A. If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damage, costs, or ^expenses incurred by the owner or operator as a result of the contact.
B. Nothing contained in this Chapter shall be construed to alter, amend, restrict, or limit the liability of an owner or operator of the high voltage line under current law.
After reading LSA-R.S. 45:143 in conjunction with LSA-R.S. 45:144, it is clear and unambiguous that persons who violate the notice requirements are considered as the “persons responsible” for the result of the physical or electrical contact and are liable to the owner or operator of the high voltage line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact. Simply put, if Stewart, Landaverde and Woodward violated LSA-R.S. 45:143, Entergy should be entitled to indemnification for the damages resulting from the physical or electrical contact of Moreno with the high voltage line pursuant to LSA-R.S. 45:144. If Stewart, Landaverde and Woodward did properly notify Entergy and are not in violation of LSA-R.S. 45:143, then Enter-gy is not entitled to indemnification for the damages resulting from the physical or electrical contact of Moreno with the high voltage line. Because the statutes are clear and unambiguous and their applications do not lead to absurd consequences, there is no need for this Court to search *415 the intent of the Louisiana legislature. See, Pumphrey v. City of New Orleans, 05-0979 (La.4/4/06); 925 So.2d 1202, 1209; LSA-C.C. art. 9. Consequently, LSA-R.S. 45:143 and 144 should be applied as written.
Additionally, I disagree that the conclusions of the majority opinion are supported by LSA-R.S. 9:2780 of the Oilfield Indemnity Act. In the Act, the legislature specifically stated its intent that certain indemnification provisions are null and void and against public policy. In the OPLSA, the legislature could have very well included restrictions that limit the extent of |4damages, costs, or expenses incurred by the owner or operator. However, the legislature did not apply the restrictions of LSA-R.S. 9:2780 to the OPLSA, and I believe that was purposefully done.
Because the trial court did not determine whether Stewart, Landaverde and Woodward were “persons responsible” in violation of LSA-R.S. 45:143, I opine summary judgment is not the proper procedural mechanism to dispose of that genuine issue of material fact of Entergy’s cross-claims. Therefore, I would find the trial court erred in granting the motions for summary judgment of Stewart, Landa-verde and Woodward against Entergy and reverse the dismissals of Entergy’s cross-claims.

StewaH’s Appeal

On appeal, Stewart alleges that the trial court erroneously granted the motion for summary judgment by Landaverde, which dismissed its cross-claim, because Stewart is entitled to seek indemnity from Landa-verde pursuant to the contract indemnity clause in the “Temporary Labor Contract” because Landaverde’s employees were negligent in causing the accident. Additionally, Stewart alleges that the trial court erroneously granted Western World’s motion for summary judgment, which dismissed its third-party demand, because the “Temporary Labor Contract” between Western World’s insured, Landa-verde, and Stewart is an “Insured Contract” under the terms of Western World’s insurance policy.

Indemnity Agreement

Stewart contends that the indemnity agreement at issue is valid and enforceable and specifically states that 1) Landaverde must indemnify Stewart for negligent acts of Landaverde’s employees, which would include Moreno; and/or, 2) Landaverde must indemnify Stewart for damages, losses, etc. arising out of the use of Stewart’s equipment, tools and scaffolding.
|fiSection 1 entitled “Indemnification” of the “Temporary Labor Contract” provides, in pertinent part:
LCI[3] agrees to defend, indemnify and save and hold Client [Stewart] (and any property owner, general contractor and/or other party Client is working with or for, contractually or otherwise) harmless from any and all losses, damages and liability claims, demands, suits, causes of action, costs of expenses resulting from injury, costs, including but not limited to reasonable attorney fees and court costs, damages, death, harm or loss to Client or any person arising or out of act(s), action(s), behavior and/or negligence, either solely, in concert or in part, of LCI or its employees ... LCI also releases Client from any and all claims, losses, costs including attorney’s fees, damages, injury, death expenses and liability arising from or in connection with the undersigned use of equipment, tools, scaffolding, etc.; and agrees to hold harmless and indemnify Client and their agents and employees from *416 any and all claims by whomsoever made, losses, costs including attorney’s fees, damages, injury, death expenses, and liability arising from or in connection with any acts or omissions of or the use of said equipment, tools, scaffolding, etc.
On its face, this contract, which was signed by representatives from both sides, provides for Stewart’s indemnity from Landaverde for any and all losses, damages and liability claims, demands, suits, causes of action and costs of expenses resulting from injury. Stewart’s cross-claim asserted that it is entitled to recover all costs from Landaverde pursuant to the terms of the contract. As such, I would find the trial court erred in dismissing Stewart’s cross-claim against Landaverde and find there is a genuine issue of material fact remaining as to whether Stewart can be indemnified by Landaverde in the event Stewart is found liable in this matter. Therefore, I would reverse the trial court’s dismissal of Stewart’s cross-claim against Landaverde.

“Insured Contract” Provision

Stewart avers that Western World’s general liability policy insuring Landa-verde provides coverage for negligent acts committed by RLandaverde’s employees because the “Temporary Labor Contract” is an “Insured contract” under the terms of the policy.
Under the “Exclusions” section of Western World’s “Commercial General Liability Coverage Form,” it provides, in pertinent part:
e. Employer’s Liability
“Bodily injury” to
(1) An “employee” of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured’s business;
* * *
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
This exclusion does not apply to liability assumed by the insured under an “insured contract. ” (Emphasis added).
Further, under “Section V-Definitions”, the policy provides,
9 “Insured contract” means:
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for “bodily injury” or “property damage” to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.
The trial court in this matter granted Western World’s motion for summary judgment against Stewart and dismissed all claims made by Stewart against Western World with prejudice. The trial court held there was no coverage provided by the Western World policy of insurance for any claims made by Stewart against Land-averde. However, I disagree with that finding.
|7The “Temporary Labor Contract” between Stewart and Landaverde states that Stewart could be indemnified by Landa-verde for any and all losses, damages and liability claims, demands, suits, causes of action, and costs of expenses resulting from injury and liability arising from or in connection with any acts or omissions of or the use of scaffolding. The “Temporary *417 Labor Contract” falls within the scope of the “Insured contract” definition of Western World’s policy. As such, it is an exclusion to the provisions of the policy regarding “Employer’s Liability.”
In this matter, I would hold that there is a remaining genuine issue of material fact as to whether Stewart is liable under a tort liability and would be subject to indemnification from Landaverde and Western World. Therefore, I would reverse the trial court’s grant of Western World’s motion for summary judgment against Stewart.

Woodward’s Appeal

Indemnification from Landaverde

After a hearing on the merits, the trial court granted Landaverde’s motion for summary judgment and dismissed all of the claims made by Woodward with prejudice. I disagree with the trial court and would find that the same provisions that apply to Stewart under the “Temporary Labor Contract” also apply to Woodward as a general contractor and/or other party as described in the contract as who the “client” is working with or for. In consequence, I would reverse the trial court’s grant of Landaverde’s motion for summary judgment against Woodward.

Indemnification from Western World

The trial court dismissed Woodward’s cross-claim against Western World and held that no coverage is provided by the Western World policy of insurance for any of the claims by Woodward against Landa-verde. Because |SI would reverse the trial court’s dismissal of Woodward’s cross-claim against Landaverde, I would also reverse the trial court’s grant of Western World’s motion for summary judgment against Woodward and find there is a remaining genuine issue of material fact as to whether Woodward is liable under a tort liability and would be subject to indemnification from Western World.
Based upon the foregoing reasons, I would reverse the trial court’s granting of the motions for summary judgment and the dismissals of the cross-claims of Enter-gy Louisiana, LLC, against Carl E. Woodward, LLC, Stewart Interior Contractors, LLC, and Landaverde Construction, LLC; the dismissal of Stewart Interior Contractors, LLC’s cross-claim against Landa-verde Construction, LLC and the third-party claim against Western World Insurance Company; and, the dismissal of Carl E. Woodward, LLC’s cross-claim against Landaverde Construction, LLC and Western World Insurance Company. Additionally, I would remand the matters to the trial court for further proceedings.

. LCI is the acronym for Landaverde Construction, Inc.